Argued October 30, decided December 3, 1912.

### BAKER *v.* SEAWEARD.*

(127 Pac. 961.)

**Principal and Agent—Rights and Liabilities as to Third Persons —Representation of Principal.**

1. A principal is not bound by the acts of his agent, unless within the real or apparent scope of such agent's authority.

**Principal and Agent—Rights and Liabilities as to Third Persons —Representation of Principal.**

2. One dealing with an agent is bound at his peril to ascertain the extent of the agent's authority, and is chargeable with knowledge thereof.

**Principal and Agent—Evidence as to Authority—Burden of Proof.**

3. A party relying upon a contract made with an alleged agent must prove, where the agency is disputed, that he was expressly empowered to make the contract, and that its terms were within the scope of his authority.

---

*For authorities on the doctrine that a person dealing with an agent has the right to rely upon his assumption of authority, see note in 38 L. R. A. (N. S.) 1137.                                    REPORTER.

**Principal and Agent—Powers of Agent—Questions of Law or Fact.**

4. Where an agency is proved or admitted, it is the duty of the court to determine whether or not a particular act was within the agent's authority.

**Principal and Agent—Powers of Agent—Questions of Law or Fact.**

5. Where plaintiff's testimony that a person left in charge of sheep owned by him was authorized to sign his name to checks only for the purpose of paying herders, for provisions, and ordinary expenses for the care of the sheep, was uncontradicted, and a person from whom such agent purchased horses had no knowledge or information as to his authority, except the agent's representations, the court should have held that the agent had no authority to purchase such horses, instead of submitting that question to the jury.

**Principal and Agent—Powers of Agent—Implied and Apparent Authority.**

6. For a principal to be bound by the acts of his agent in excess of his authority, it must appear that he held the agent out to the public in other instances as possessing authority embracing the act in question, or that he knowingly acquiesced in the agent's assertion of the requisite authority, and that the party dealing with the agent had reason to believe, and did believe, that the agent had the necessary authority.

**Principal and Agent—Powers of Agent—Questions for Jury.**

7. Where there was no evidence that plaintiff held out his agent as having authority to buy horses, or that the horses were used for him by the agent after he knew of the purchase, these questions were erroneously submitted to the jury.

**Principal and Agent—Ratification—Questions for Jury.**

8. In an action involving the validity of an agent's contract, the question of ratification is properly submitted to the jury if there is any evidence thereof.

From Malheur: DALTON BIGGS, Judge.

Statement by MR. CHIEF JUSTICE EAKIN.

This is an action by R. E. Baker against E. F. Seaweard, to recover $750 money had and received by defend-

ant for the use of plaintiff. The facts out of which the action arose are that the plaintiff owned and managed two brands of sheep in Malheur County, and about October 20, 1910, intended visiting Colorado Springs for his health, to be gone about two months. He left one E. P. Mickey in charge of the sheep, and authorized him to sign plaintiff's name to checks on the First National Bank of Ontario, with which to pay the herders, to pay for provisions, and for any ordinary expenses for the care of the sheep; that on the 28th day of November, 1910, Mickey purchased three head of horses from the defendant at the agreed price of $750, and gave in payment a promissory note in that sum, payable in 30 days to the order of the defendant, signed "R. E. Baker, by E. P. Mickey." At the maturity of the note Mickey issued to defendant a check on the First National Bank of Ontario for the sum of $750, signed "R. E. Baker, by E. P. Mickey," which check was cashed by the bank and charged to the account of plaintiff, which he paid to the bank, and plaintiff sues to recover from defendant the amount of the check, for the reason that Mickey had no authority to purchase the horses, nor to issue the check therefor. Defendant alleges in the answer that plaintiff and Mickey were partners in the said sheep business, and that during the time of said transaction Mickey was, by plaintiff, placed in personal charge of said business, with full authority to buy, sell, and pay for anything connected with the transaction of such business. At the close of the evidence the court instructed the jury, among other things:

"(7) I instruct you that an agent of a party has the authority to bind his principal in any transaction within the apparent scope of his agency, and that a person dealing with an agent is bound at his peril to ascertain the extent of the agent's authority; and if you find in this case that the said E. P. Mickey was the agent of plaintiff, and was acting within the apparent scope of

his agency in purchasing the horses from the defendant, then your verdict should be for the defendant in this case; but if you find that said E. P. Mickey was not the agent of defendant, or that buying and paying for horses was not within the apparent scope of the agent's authority, then you will find for the plaintiff in the case.

"(8) A principal can so hold a person out to the world as being his agent, with certain authorities, as to bind the principal as to the acts of the agent. * *

"(11) By the 'apparent scope of authority' is meant the authority which a person appears to have from the general nature of the business which he is employed, as an agent, to handle.

"(12) It is also claimed by the defendant that the plaintiff ratified and confirmed the sale of said horses and the payment of said money for the sale; and in that respect I instruct you that a principal may ratify and confirm the act of his agent, either by express acts or by implication. In this case there is no evidence before you that plaintiff expressly ratified and confirmed said sale; but if you find from the evidence that said Mickey did purchase certain horses from the defendant, and that said horses were used in the business owned by plaintiff and managed by said E. P. Mickey after plaintiff had been informed of the purchase of the same, then I instruct you that that would constitute a sufficient ratification of the act of said Mickey; and I further instruct you that it is necessary for a principal to disaffirm or disavow an act of an agent within a reasonable time after coming into possession of the facts and information concerning such act, and if he fails to disavow or disaffirm such act within a reasonable time after obtaining information thereof it is tantamount to a ratification of such acts. * * "

Thereupon the jury rendered a verdict for the defendant, and plaintiff appeals.          REVERSED.

For appellant there was a brief over the names of *Mr. John L. Rand* and *Mr. William H. Packwood, Jr.,* with an oral argument by *Mr. Packwood.*

Sig. 12

For respondent there was a brief with oral arguments by *Messrs. Brooke & Tomlinson.*

Opinion by MR. CHIEF JUSTICE EAKIN.

Two principal. defenses are relied upon, namely, that Mickey, as agent for plaintiff, had authority to purchase the horses, and that plaintiff ratified said purchase.

1-3. We will first ascertain the law as to the agency, and who must determine the issues thereunder. It may be stated generally that a principal is not bound by the acts of his agent, unless within the real or apparent scope of the authority of such agent; and one dealing with an agent is bound, at his peril, to ascertain the extent of the agent's authority, and is chargeable with knowledge thereof. *Reid* v. *Alaska Packing Co.*, 47 Or. 215 (83 Pac. 139). And where a party relies upon a contract made with a person claiming to be an agent of another, he must prove, where the agency is disputed, that he was expressly empowered to make the contract, and that its terms were within the scope of his authority. *Rumble* v. *Cummings,* 52 Or. 203 (95 Pac. 1111).

4. The agency being proved or admitted, it is the duty of the court to determine whether or not the particular act of the agent relied on was within his authority. In the case of *Wollenberg* v. *Sykes,* 49 Or. 163, 169 (89 Pac. 148, 150), it is said: "The question whether or not Gingrich, as plaintiff's architect, was his agent, and, as such, authorized to act, is not questioned, and, if it had been controverted, would have been a question to be submitted to the jury; but whether it was within the scope of his authority to procure or approve sureties on a bond, or undertaking, was a question for the court. * * The existence of an agent's authority is one of the facts to be determined by the jury; but what acts come within the conferred power is a question of law for the court's determination." In *Long Creek Building Association* v. *State Insurance Co.*, 29 Or. 576 (46 Pac. 366),

it is said that, while the existence of an agency is always a question of fact, what may be lawfully done thereunder is a question of law. Where the fact of the appointment and authority of an agent are not in controversy, it is the duty of the court to declare, as a matter of law, whether or not it empowers him to perform the particular act in question. See, also, *Glenn* v. *Savage,* 14 Or. 576 (13 Pac. 442) ; *Rumble* v. *Cummings,* 52 Or. 203 (95 Pac. 1111) ; *Mahon* v. *Rankin,* 54 Or. 342 (102 Pac. 608: 103 Pac. 53).

5. Here the agency is admitted by plaintiff, and there is no conflict in the evidence as to its extent. No witness testifies in regard to it but the plaintiff, and he says:

"I gave him [Mickey] the privilege of paying those herders, paying for this grub, and any expense ordinarily for these sheep, and outside of that he had no right to give any checks; but one time there we thought about buying a bunch of lambs. I told him if we could get the lambs for a certain price he could take the lambs and pay $500 down, and he could go ahead and give a check."

There is no evidence of any other or further authority given to Mickey.

6. The principal is often bound by the acts of his agent in excess of his authority; but two important facts must be clearly established to create such a liability: (1) The principal must have held the agent out to the public in other instances as possessing sufficient authority to embrace the particular act in question, or knowingly have acquiesced in the agent's assertion of the requisite authority; and (2) the party dealing with such agent must have had reason to believe, and must have believed, that the agent possessed the necessary authority. Justice MOORE, in the case of *Connell* v. *McLoughlin,* 28 Or. 232 (42 Pac. 218), says these two facts must always be established to render the principal liable for the act of his agent in excess or abuse of his authority; for any person dealing with an agent does so at his peril. In

that case it was held that there was no evidence that the agent was held out as having authority to execute the note, and defendant's liability was limited to the authority expressly given. In this case it would hardly be contended that plaintiff could have been held liable upon the note given, and the issuing of the check did not create any new or different liability upon plaintiff. Therefore the agency was not a disputed fact, and there was no evidence to support the allegation of the answer that plaintiff and Mickey were partners in the sheep; nor was there any question for the jury relating to the agency, or to its extent. It was for the court to decide whether the purchase of the horses by Mickey was within the authority of his agency. The defendant had no knowledge or information that Mickey had such authority, other than the representations of Mickey. In answer to the question, "What, if any representations, Mr. Seaweard, did that gentleman [Mickey] make to you as to his being an agent or attorney in fact of R. E. Baker?" defendant answers: "Well, at the time he bought the horses, he said he was buying them for him and Baker." Therefore it was error to submit to the jury the question whether the purchase of the horses was within the authority of the agency.

7. Neither was there any evidence that plaintiff held Mickey out as his agent with authority to buy horses, nor that the horses were used for plaintiff by Mickey after plaintiff was informed of the purchase; and the instructions submitting these questions to the jury were error.

8. The question of ratification was a proper one to be submitted to the jury, in so far as there was any evidence upon that question.

For the errors herein indicated, the judgment will be reversed, and the cause remanded to the court below for such further proceedings as may be proper, and not inconsistent with this opinion.          REVERSED.