Argued April 23, reargued July 16, reversed and dismissed September
17, 1918, rehearing denied February 11, 1919.

## GILBERT v. GLOBE & RUTGERS FIRE INS. CO.*

(174 Pac. 1161; 178 Pac. 358.)

**Insurance—Time to Sue.**

1. If insurer was estopped to plead time limitation by its promises
to pay policy, the estoppel was removed when insured was notified
that insurer denied liability and would contest, and upon receipt of
such notice insured had a reasonable time in which to commence
action.

**Insurance—Time to Sue.**

2. Insured's estoppel to plead policy time limitation being removed
by its notifying insured that it denied liability, insured's suit was
not brought within a reasonable time, where it was not brought until
two years and eight months after such notification.

**Insurance—Garnishment—Time Limitation in Policy.**

3. Where policy required action thereon to be brought within one
year of loss, the fact that insurer was garnished by creditor of in-
sured pending settlement of loss, and refused to settle loss while gar-
nishment proceeding was pending, did not amount to waiver of time
limitation in policy.

[As to limitation of actions on fire insurance policies, see note
in 28 Am. St. Rep. 583.]

### ON REHEARING.

**Insurance—Time Limitation of Policy—Estoppel to Plead—Nullifica-
tion.**

4. Where holder of fire policy, requiring action within year of loss,
failed to commence action against insurer within 12 months after
being notified insurer repudiated claim, his action was barred; any
estoppel of insurer to plead time limitation effected by promises to
pay policy having been nullified.

---

*For authorities passing on the question of stipulation limiting time
for suit on insurance policy, when begins to run, see notes in 47
L. R. A. 966; 48 L. R. A. (N. S.) 906. REPORTER.

From Marion: Percy R. Kelly, Judge.

In Banc.

On June 14, 1912, for value, the defendant executed to plaintiff its certain standard fire insurance policy for $1,200 on a beach cottage in Gearhart Park. On October 2, 1912, while the policy was in force, the property was totally destroyed by fire. The defendant was promptly notified of the loss and about October 16, 1912, the plaintiff with T. C. Shankland as the adjuster of the defendant and at his request made a trip to Gearhart for the purpose of adjusting the loss. Shankland fixed the amount of the loss at $1,531, and thereafter they returned together to Portland. The claim was never paid and outside of some personal interviews with the agent of the company and the writing of some letters to the home office insisting upon payment, nothing further was done by the plaintiff prior to the commencement of this action. Pending the adjustment of the loss, the representative of the Astoria Box and Lumber Company had a conference with Shankland, after which that company commenced an action against the plaintiff upon an alleged claim of about $500, sued out a writ of attachment and caused a garnishee process to be served upon the defendant to secure the claim.

Plaintiff commenced this action on June 29, 1916. The policy provides that in the event of loss the insured "within sixty days after the fire, unless such time is extended in writing by the company, shall render a statement to the company signed and sworn to by said insured," as to certain matters and things therein required. It also provides:

"No suit or action on this policy for the recovery of any claim shall be sustainable in any court of law

or equity until after the full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months next after the fire."

In his complaint the plaintiff alleges that he kept and performed all of the terms and conditions of the policy by him to be kept and performed; that after the garnishee process was served he demanded of defendant that it pay the amount of the policy; that "said demand was repeatedly made and said defendant herein represented that said payment would be made and said loss fully adjusted and settled as soon as said pretended garnishment proceedings had been determined and disposed of"; that "said representations and promises on the part of defendant in reference to said settlement of said loss were continued until after one year had elapsed from the date of said fire as herein set forth and alleged, and then, and after that date said company refused to make settlement of said loss or any part of said $1,200 absolutely"; that such representations and promises were made to deceive the plaintiff and that by reason thereof he did not commence his action "upon said policy within the time limit therein, to wit: one year; and said plaintiff believed said representations to be true and relying thereon, was induced thereby not to bring said action within said time aforesaid"; that such representations were false and fraudulent and were made without any purpose or intent of complying therewith and to deceive and mislead the plaintiff; that he relied thereon "and on account of said representations and said conduct defendant ought not now to be permitted to say that this action was not commenced within the time limited by said policy."

To the complaint the defendant filed an amended answer, denying any and all of its material allega-

tions, except as to the issuance of the policy, and, among other grounds of defense and for a further and separate answer, alleged that the "proof of loss" was not made within sixty days after the fire, as provided for in the policy, and that the action was not commenced within the time specified by the terms of the policy.

To this answer the plaintiff filed a further and separate reply in which he alleged facts tending to show that the defendant was estopped to claim that "proof of loss" was not made within sixty days or to plead the time limitation in the policy, for the reasons that "said representations and promises on the part of defendant in reference to said settlement of said loss were continued until after one year had elapsed from the date of said fire, as set forth and alleged in plaintiff's complaint, and then, and not until then, said company refused to make settlement for said loss or any part thereof."

A trial was had and the jury returned a verdict for the full amount of the policy, upon which judgment was entered and from which this appeal is taken.

                                REVERSED AND DISMISSED.

For appellant there was a brief over the name of *Messrs. Veazie, McCourt & Veazie,* with an oral argument by *Mr. J. C. Veazie.*

For respondent there was a brief with oral arguments by *Mr. Carey F. Martin* and *Mr. Walter C. Winslow.*

JOHNS, J.—We have twice carefully read the record. The plaintiff met the adjuster of the defendant at the scene of the fire, for the purpose of investigating

and adjusting the amount of the loss, in going to and from which place he traveled 250 miles. It is very apparent from the record that the sole and only object. of the plaintiff in meeting the adjuster at Gearhart was to ascertain and determine the amount of the loss, with a view of making the necessary proofs; otherwise, he would not have gone to the expense and trouble of making the trip.

The policy was for $1,200; the adjuster found that the loss was $1,531, hence the amount of the loss was adjusted. It is maintained that the plaintiff did not make any actual "proof of loss" as required by the terms and conditions of the policy. There is no evidence that the plaintiff ever requested or that the defendant ever furnished him any blanks for his "proof of loss." Fair dealing and business courtesy required that the defendant should aid and assist, rather than mislead and deceive him in the making of his "proof of loss," and it is very clear that the adjuster, Shankland, was far more interested in having the garnishee process of the Astoria Box and Lumber Company served on the defendant than he was in aiding and assisting the plaintiff; otherwise, there never would have been any question about such proof. But under the view that we have taken of this case, all such considerations become immaterial. The testimony shows that the plaintiff read over and knew the terms and conditions of the policy at the time of its receipt and it expressly provides that any action must be brought "within twelve months next after the fire." The fire occurred on October 2, 1912; this action was commenced on June 29, 1916. The authorities are uniform in holding that a time limitation in which such an action shall be brought is valid if the time is

reasonable, and that a twelve months' limitation is reasonable.

The plaintiff alleges in his complaint that one year after the fire the defendant "then refused to make said settlement for said loss, or any part of said sum of $1,200 absolutely"; and that "relying upon the alleged promises and by reason thereof, he did not bring his action within the twelve months; that the defendant ought not now to be permitted to say that this action was not commenced within the time limited by said policy." In substance, he makes the same allegations in his reply and as a witness he testifies to a conversation with the adjuster, Shankland, in the fall of 1913, in which the adjuster told him that he did not have any right to bring action, that he had lost his right if he ever had one; and also that up to the time of that conversation with Shankland in Portland in October, 1913, he relied upon the promises of the defendant that the policy would be paid when the garnishment proceedings were adjusted. Hence the plaintiff alleges in both his complaint and reply, and as a witness testifies, that at or about the time the year expired he knew and was advised by the company that it denied all liability and would contest his claim, yet he did not commence his action until at least two years and eight months after he received that information. In the face of such allegations and proof, we are of the opinion that when he acquired such knowledge he could not thereafter rely, and did not rely, upon such alleged promises or representations of the company. The plaintiff has not shown or alleged any excuse or reason for not bringing his action within a reasonable time after he received the information, on or about October 2, 1913, that his claim would be contested, or why he delayed bringing his action until June 29, 1916.

1, 2. Assuming that the defendant was estopped to plead the time limitation, the estoppel was removed when the plaintiff was notified that the defendant denied liability and would contest his claim, and upon receipt of such notice the plaintiff then had a reasonable time within which to commence his action: *David* v. *Oakland Home Ins. Co.,* 11 Wash. 181 (39 Pac. 443); *Phillips* v. *Union Central Life Ins. Co.,* 101 Fed. 33. The action was commenced on June 29, 1916, and under the facts disclosed by the record we hold as a matter of law that it was not commenced within a reasonable time after the defendant notified the plaintiff that it would contest his claim and deny liability, and for such reason the court should have directed the jury to return a verdict for the defendant. This decision is founded upon a contract and is not in conflict with, and is to be distinguished from, the opinion of Mr. Justice BENSON in the case of *Hood* v. *Seachrest,* 89 Or. 457 (174 Pac. 734), which was founded upon the statute.

3. It is also shown by the record that the garnishee process was still pending at the time the action herein was commenced, and under the authority of *Ripley* v. *Aetna Ins. Co.,* 30 N. Y. 136 (86 Am. Dec. 362), the fact that the defendant had been garnished and that by reason thereof it would not settle the loss while that process was pending did not amount to a waiver of the time limitation in the policy, and the defendant would not be estopped. The judgment of the Circuit Court is reversed and the action is dismissed.

REVERSED AND DISMISSED.

Rehearing denied February 11, 1919.

PETITION FOR REHEARING.

(178 Pac. 358.)

In Banc.

On petition for rehearing.    PETITION DENIED.

*Mr. Walter C. Winslow* and *Mr. Carey F. Martin,* for the petition.

*Messrs. Veazie, McCourt & Veazie, contra.*

BENSON, J.—The petition for rehearing in this case very earnestly attacks the conclusion in the original opinion herein, which is expressed in these words:

"Assuming that the defendant was estopped to plead the time limitation, the estoppel was removed when the plaintiff was notified that the defendant denied liability and would contest his claim, and upon receipt of such notice the plaintiff then had a reasonable time within which to commence his action."

The opinion concludes that since more than two years had elapsed thereafter before the action was commenced, plaintiff's right was barred. The question suggested by the opinion and the arguments upon the petition for rehearing did not assume a prominent position in the former hearing, and therefore, we have since made a very careful investigation of the authorities which have at this time been cited by counsel.

Plaintiff argues that when a defendant has, by his own conduct waived any of the requirements of a contract, that condition or limitation is out of the contract for all time, and cannot be revived. He also urges, as a sequence, that when the period of the limitation

fixed by the contract has been eliminated by the conduct of the defendant, there remains no limit other than the general statute of limitations, under which this action is not barred. In considering the authorities in support of this view, we may well keep in mind the somewhat elusive distinction between waiver and estoppel as illustrated in *Kimball* v. *Horticultural Fire Relief*, 79 Or. 133 (154 Pac. 578), a distinction which appears to be, that a waiver is a voluntary relinquishment of a known right, while an estoppel consists of a preclusion which in law prevents a party from alleging or denying a fact in consequence of his own previous act, averment or denial. Hence, if a party relinquishes a known right, awarded him by contract, he cannot, without the consent of his adversary, reclaim it. But the ban of an estoppel may be lifted by the party against whom it is invoked, by the giving of proper notice. In the case at bar, we may assume that the defendant, by the conduct of its agents, led the plaintiff to believe that his claim would not be contested, but would eventually be paid. So long as it maintained this attitude, the plaintiff was warranted in remaining quiescent, but when defendant notified him that the policy claim would not be paid, the ban of the estoppel was raised, and the plaintiff could no longer plead that he was being deceived, by the tactics of the adversary.

With these principles in mind, let us examine the authorities cited by the appellant. The leading case relied upon is that of *Semmes* v. *Hartford Ins. Co.*, 80 U. S. (13 Wall.) 158 (20 L. Ed. 490), in which the circumstances were of a sort which could occur only once in many generations. The plaintiff was a resident and citizen of Mississippi, and the defendant a corporation of Connecticut. The loss occurred in January, 1860,

and the action was begun on October 31, 1866. The defendant relied upon a provision in the policy to the effect that—

"No suit for the recovery of any claim upon the same should be sustainable in any court unless such suit should be commenced within the term of twelve months next after any loss or damage should occur; and that in case any such suit should be commenced after the expiration of twelve months next after such loss or damage should have occurred, the lapse of time should be taken and deemed as conclusive evidence against the validity of the claim thereby attempted to be enforced."

To this plea there was a replication of the diverse citizenship of the parties, and that the Civil War had prevented the prosecution of the suit within the time limited in the contract. Mr. Justice Miller delivered the opinion of the court, and apparently bases his reasoning and conclusion upon the second clause of the time limitation, as above set out, using this language:

"Now, this contract relates to the twelve months next succeeding the loss, and the court has no right, as in the case of a statute, to construe it into a number of days equal to twelve months to be made up of the days in a period of five years in which the plaintiff could lawfully have commenced his suit.

"So also, if the plaintiff shows any reason which in law rebuts the presumption, which, on the failure to sue within twelve months, is, by the contract, made conclusive against the validity of the claim, that presumption is not revived again by the contract. It seems that when once rebutted fully, nothing but a presumption of law or a presumption of fact could again revive it. * * And though the plaintiff may show by his disability to sue a sufficient answer to the twelve months provided by the contract, he must still bring his suit within the reasonable time fixed by legislative authority, that is, by the statute of limitation."

It will be at once observed that this case is widely different from the one at bar, in that there is no element in it, either of waiver or of estoppel. The failure to bring the action within the contract time was not attributable to either plaintiff or defendant, but to the unforeseen tragedy of civil war. This difference is emphasized by the fact that Mr. Justice MILLER bases his conclusion upon that clause of the policy which makes the failure to sue within twelve months conclusive evidence of the invalidity of the claim, a clause which is not found in the policy which we are considering.

The next case which we are asked to consider is *Illinois Live Stock Ins. Co.* v. *Baker,* 153 Ill. 240 (38 N. E. 627). This case holds that hopes of payment held out to a plaintiff by an insurance company as an inducement not to sue within the time limited in the policy, operates as a waiver of the limitation clause in the policy; that such waiver cannot be revoked, and that after such waiver the case rests upon the statutory limitation.

Next we have the case of *Galloway* v. *Standard Fire Ins. Co.,* 45 W. Va. 237 (31 S. E. 969), from which we quote:

"Now, whether such promise continuing unexecuted for a time, and then ended by a refusal to perform it, leaving a part of the period reasonably sufficient for suit, would be a waiver of the clause, or merely suspend it from the promise to the refusal to fulfill it, I need not—do not—say. I do say, however, that where such promise stands for the whole period of the limitation, it is not a mere suspension, but a waiver of the clause of limitation."

The opinion cites with approval, *Semmes* v. *Hartford Ins. Co.,* 80 U. S. (13 Wall.) 158 (20 L. Ed. 490), and *Illinois Live Stock Ins. Co.* v. *Baker,* 153 Ill. 240

(38 N. E. 627), and holds that the general statute of limitations controls.

Finally our attention is directed to *Earnshaw* v. *Sun Mutual Aid Society*, 68 Md. 465 (12 Atl. 884, 6 Am. St. Rep. 460). This case resembles that of *Semmes* v. *Hartford Ins. Co.*, 80 U. S. (13 Wall.) 158 (20 L. Ed. 490), in that there is no element of either waiver or estoppel, the delay in bringing the action having been accomplished by the act of a third party who commenced a suit to restrain the defendant from paying the money to plaintiffs, and secured a temporary restraining order which continued in force until the contract time limitation had expired. The opinion simply follows *Semmes* v. *Hartford Ins. Co.*, 80 U. S. (13 Wall.) 158 (20 L. Ed. 490), and bases its conclusion upon that authority.

Opposed to these, there is a strong line of authorities which hold to the view that such acts of the defendant as are indicated in the present case do not, in the strict sense, constitute a waiver, but a simple case of estoppel, the effect of which is to suspend the time limitation of the contract until the hour when the estoppel is removed by notice to the plaintiff that his claim is repudiated, at which moment the contract limitation again becomes effective, and gives the plaintiff twelve months from that date in which to begin his action. Among the authorities supporting this doctrine, we note 1 Wood on Limitations, Section 49, which says:

"If the insurer adjusts the loss, and promises to pay it within a specified time, the period covered by the promise is excluded from the limitations."

Joyce on Insurance, Section 3207, says:

"A provision requiring suit to be brought within a certain time may be waived, and this waiver may be inferred from acts and conduct on the part of the in-

surer.   And if the insured is induced by the acts of the officers or agents of the insurer to suspend for a certain time the performance of acts required on his part after loss, such time should be added to the time limited for bringing action.''

The following cases support the doctrine thus formulated: *Küllips* v. *Putnam Fire Ins. Co.,* 28 Wis. 472 (9 Am. Rep. 506) ; *Black* v. *Winnieshiek Ins. Co.,* 31 Wis. 74; *Kentucky M. S. F. Co.* v. *Turner,* 89 Ky. 665 (13 S. W. 104) ; *Stell* v. *Phenix Ins. Co.,* 51 Fed. 715 (2 C. C. A. 463) ; *Allemania Ins. Co.* v. *Peck,* 33 Ill. App. 548; *Fey* v. *I. O. O. F. M. L. Ins. Co.,* 120 Wis. 358 (98 N. W. 206) ; *Voorheis* v. *People's M. B. Soc.,* 91 Mich. 469 (51 N. W. 1109).   These authorities appear to us to be founded upon the better reasoning and we therefore conclude that plaintiff having failed to commence his action within twelve months after being notified that defendant repudiated his claim, the action is barred, and the petition for a rehearing must be denied.                                      Rehearing Denied.

McBride, C. J., and Harris and Bean, JJ., concur.

Johns, J., concurs in the result, adhering to the former opinion.

BURNETT, J. (Concurring).—This is an action to recover the amount of a policy of the standard form prescribed by the statutes of this state, insuring a dwelling-house owned by the plaintiff, for one year from June 14, 1912.   The complaint alleges that:

''Thereafter and on the ―― day of October, 1912, the plaintiff made due and sufficient notice of the fire, and proof of loss in the form required by said defend-ant and caused the same to be filed with said defend-

ant company, which said proof was filed and accepted by said defendant company;

"That plaintiff herein has duly and fully performed all of the terms, conditions and obligations of said policy upon his part to be kept and performed"; and

"That upon the —— day of October, 1912, said defendant company made a full and complete investigation of said fire and assessed and established the loss of this plaintiff to be about the sum of sixteen hundred dollars."

These quoted excerpts from the complaint are denied by the answer.

It is admitted that the house was totally destroyed by fire October 2, 1912. The plaintiff's allegation of his ownership of the property is traversed. It is admitted, as he alleges in substance, that a few days after the fire, in an action in the Circuit Court for Marion County against the plaintiff here, the plaintiff in that action caused a writ of attachment to be issued and levied upon the funds in the hands of the defendant company owing to this plaintiff. The complaint charges in substance that after the attachment was levied, the plaintiff demanded from defendant the amount of the policy and the latter represented that payment would be made and the loss fully adjusted and satisfied as soon as the attachment proceedings had been determined and disposed of, which representations were continued until after a year had elapsed from the date of the fire, after which the company refused absolutely to pay anything whatever; that the assurances of payment after the settlement of the attachment proceedings were made for the purpose of deceiving the plaintiff and causing him not to bring any action against the defendant; that, believing such representations to be true, he was induced

thereby not to sue within the time prescribed by the policy, and that on account of said representations the defendant ought not now to be permitted to say that the action was not commenced within the time limited by the contract.   Averring that no part of the insurance money has been paid, the plaintiff demands judgment therefor, with interest and costs.   A copy of the policy is appended to the complaint as an exhibit.

The matter about promising to pay as soon as the attachment had been determined and the charges of deception on the part of the defendant were denied by the answer.

Among other defenses, the defendant, reciting the contents of the policy on that point, avers that the plaintiff did not within sixty days after the fire, and has not at any time rendered any statement to the defendant containing any of the matters or things required by the said policy of insurance, nor did he within sixty days after the fire or at any time since offer any proof of his loss; and, further, that no suit or action on the policy was commenced within twelve months next after the fire or at any time before this action was begun, which itself was not instituted within the time provided by said policy.   This was traversed by the reply.   By way of estoppel that pleading declares in substance:

"That the defendant ought not to be permitted to say that the action was not commenced within sixty days after the fire, upon the ground and for the reason that immediately after said fire plaintiff herein duly notified defendant thereof, and that said defendant instructed plaintiff that one T. C. Shankland would be the adjuster to adjust the loss occasioned by said fire, and that he should thereafter transact all business in connection with said loss with the said T. C.

Shankland, and that thereafter and within sixty days from said fire, plaintiff herein met the said T. C. Shankland at the place of said fire and then and there fully informed the said T. C. Shankland concerning all the facts and circumstances known to plaintiff regarding said fire, and then and there answered all questions concerning the same asked by the said T. C. Shankland, and then and there signed all papers required to be signed by the said T. C. Shankland, and that the said T. C. Shankland then and there informed this plaintiff that he had furnished all information that was necessary, and that he had signed all papers that were necessary to be signed to prove said loss and furnish information to defendant company, and that plaintiff herein relied upon the representations and statements of the said T. C. Shankland and made no other proof of said loss and furnished no other information concerning the same, believing that he had furnished all information and proof demanded and desired by said defendant company, to said company's agent, the said T. C. Shankland."

Upon similar grounds based on the allegation that the company had promised to pay the face of the policy as soon as the attachment proceedings were settled and that the promises were continued until after the one year in which he might sue had expired, it is contended that the defendant is estopped from urging the conventional limitation upon bringing the action. A jury trial resulted in a verdict and judgment for the plaintiff and the defendant appeals.

The plaintiff testifies that he effected the insurance on the property, received the policy, took it home with him and read it in full. It appears without dispute that he discovered the provision therein to the effect that the policy should be void if he were not the sole and unconditional owner of the land upon which the dwelling stood and inasmuch as he had only a permis-

sive occupancy of that realty, subject to sale for the joint account of himself and the owner of the fee, he returned the instrument to the agents who effected the insurance and they appended a rider in the form required to cover the apparent estate.

The admitted policy on its face concludes with this clause:

"This policy is made and accepted subject to the conditions, provisions and agreements not in conflict with law or contrary to public policy, contained on the first page' hereof and those hereafter placed hereon, and to the conditions placed upon page two hereof, all of which said conditions, provisions and agreements are hereby specially referred to and made a part of this policy; and no officer, agent or other representative of this company shall have power to waive any condition, provision or agreement of this policy, except such as by the terms of this policy, may be the subject of agreement written hereon or added hereto; and as to such conditions, provisions and agreements, no officer, agent or representative of this company shall have such power or be deemed or held to have waived any of such conditions, provisions and agreements, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

It is further stated in the conditions that:

"In any matter relating to this insurance no person, unless duly authorized in writing, shall be deemed the agent of this company";

Further, that:

"Within sixty days after the fire, unless such time is extended in writing by this company, (the insured) shall render a statement to this company, signed and sworn to by said insured, stating the knowledge and

belief of the insured as to the time and origin of the fire; the interest of the insured and of all others in the property; the cash value of each item thereof and the amount of loss thereon; all encumbrances thereon; all other insurance, whether valid or not, covering any of said property; and a copy of all the descriptions and schedules in all policies; any changes in the title, use, occupation, location, possession, or exposures of said property since the issuing of this policy; by whom and for what purpose any building herein described and the several parts thereof were occupied at the time of fire'';

Again:

''This company shall not be held to have waived any provision or condition of this policy or any forfeiture thereof by any requirement, act, or proceeding on its part relating to the appraisal or to any examination herein provided for; and the loss shall not become payable until sixty days after the notice, ascertainment, estimate, and satisfactory proof of the loss herein required have been received by this company, including an award by appraisers when appraisal has been required'';

And lastly:

''No suit or action on this policy, for the recovery of any claim, shall be sustainable in any court of law or equity until after full compliance by the insured with all the foregoing requirements, nor unless commenced within twelve months after the fire.''

A short time after the fire the plaintiff wrote a letter to the local agent at Portland, notifying him thereof. On October 11, 1912, that representative of the company addressed a letter to him as follows:

''Please be advised that we have heard from San Francisco about your loss at the beach. Mr. T. C. Shankland will be the adjuster; we inclose his personal card. He will send you a telegram addressed to

Hubbard on Monday forenoon; it will be sent from Ashland, Oregon, as he was called down there to-day, but Sunday evening he will be able to decide just what evening he will be able to leave Portland for Gearhart Park. He stated that it would be necessary for you to be there in order for you to properly sign up required papers.''

The plaintiff testified that Shankland preceded him to the scene of the fire, near Gearhart in Clatsop County, and that when he arrived he found Shankland and signed the following:

''Investigation Agreement.

''Witnesseth, that the undersigned W. L. Gilbert, the insured, claiming to have met with loss by fire of Oct. 2nd, 1912, to property described for insurance under Policy No. 79721 of the Globe Underwriters Insurance Company, issued at its agency at Portland, Or., on the 14th day of June, 1912, and that the undersigned T. C. Shankland has been detailed by said insurance company as its adjuster in this case to investigate the facts and circumstances of said loss, and to report particulars thereof to said insurance company's offices, for their information, and that it is desired that said attention be given without delay or prejudice to the rights of either party to said policy contract.

''*Therefore, it is hereby agreed and stipulated,* that said adjuster may proceed in said investigation and may agree with said insured, in accordance with the provisions of said policy, as to the ascertained or estimated amount of both sound value of, and loss and damage by said fire to, property which said insured claims was described for insurance under said policy, if said agreement can be reached; and that this agreement is and that the said agreement hereinabove referred to (if made) is to be, without reference to any other question or questions which has or have arisen

or may hereafter arise under the conditions and stipulations of said policy.

"Said insured understands and agrees, that the said adjuster has no authority to waive, modify or strike from said policy, any of its terms, conditions or stipulations nor to revive the said policy should it have become void or voidable from any cause.

"Witness our hands, Gearhart, Or., this 15th day of October, 1912.

"W. L. GILBERT, Insured.

"GLOBE UNDERWRITERS INSURANCE COMPANY.

"By T. C. SHANKLAND, Adjuster."

This paper seems to have been executed in duplicate, both copies being offered in evidence on the part of the defendant. The plaintiff admits signing one of them and says that the signature on the other looks like his own, but that he does not remember signing it, although he says that he signed two papers on that occasion. In one place he merely says that he made proof of loss at that time; again he says that Shankland called one of the papers "Proof of Loss." This is all denied by the latter. No notice was served upon the defendant to produce any such paper. The plaintiff says that he gave it to Shankland. The latter, however, was not called upon, as far as the record discloses, to produce the writing, and the only evidence about it on the part of plaintiff is his mere statement that he made proof of loss. There is no pretense in the testimony on his behalf that the instrument contained any of the stipulated requisites for such a writing. By the terms of the policy, which the plaintiff himself says he read with care, it is stipulated that action to recover for the loss must be brought within one year after the fire. Respecting the matter of the delay beyond that period, he says that on a subsequent

occasion Shankland told him the loss could not be paid until after the attachment action was settled.

Urged by his counsel to tell everything, he said:

"As near as I can remember, he said he didn't think there would be any trouble with the company about paying the policy when the lumber company was settled with."

Asked to tell fully what was said, plaintiff testified as follows:

"A. Well, I don't know as there was very much else said, only what I have stated here.

"Q. Well, I want you to go over the whole thing, just as though you had never mentioned it before, Mr. Gilbert.

"A. He said he had no right, because I didn't put in my proof of loss.

"Q. Was that the time when you went down there thirty days after the fire?

"A. No.

"Q. Well, now, that is the conversation we are talking about now; and I want you to confine yourself to that, and tell what he said and all that he said.

"A. Well, he didn't say anything at that time, only just that I couldn't have my money until that case was settled.   That is about all he did say about it.   I don't remember of his saying anything else that I can recall to memory now; it is some time ago."

All the matter relied upon by the plaintiff to prove either waiver or estoppel is found in the evidence about the declarations of Shankland.   No other statement of any other person in any way connected with the defendant company is put forth in support of the contention that the plaintiff was excused from furnishing proof of loss or from commencing his action within one year next after the fire.   It is necessary, there-

fore, to determine the extent of Shankland's authority to bind the company.

It is well settled that one dealing with the agent of another does so at his peril, and must be prepared to show that the other is really the agent of the principal sought to be charged, or that the latter has given the supposed agent apparent power to act as he did in the matter in question, or, with knowledge of his doings or statements, has ratified the same or has waived his want of authority or is in some manner estopped to deny the same: *Rumble* v. *Cummings,* 52 Or. 203, 208 (95 Pac. 1111); *Baker* v. *Seaweard,* 63 Or. 350 (127 Pac. 961); *Sharp* v. *Kilborn,* 64 Or. 371 (130 Pac. 375); *Roberts* v. *Lombard,* 78 Or. 100 (152 Pac. 499); *Bessler* v. *Derby,* 80 Or. 513 (157 Pac. 791).

· It is also a well-established principle that one having knowledge of the limited authority of an agent cannot bind the principal by any act or statement of the agent beyond the actual scope of the authority thus known to the one seeking to charge the principal by virtue of something said or done by the alleged agent: *Weidert* v. *State Ins. Co.,* 19 Or. 261 (24 Pac. 242, 20 Am. St. Rep. 809); *Egan* v. *Westchester Ins. Co.,* 28 Or. 289 (42 Pac. 611); *Leavitt* v. *Dimmick,* 86 Or. 278 (168 Pac. 292).

The following extract from 1 Mechem on Agency, Section 707, is apropos to the discussion:

"Parties dealing with an agent known by them to be acting only under an express grant, whether the authority be general or special, are bound to take notice of the nature and extent of the authority conferred. They must be regarded as dealing with that grant before them and are bound at their peril to notice the limitations thereto prescribed, either by its own terms or by construction of law. * * So, where the act as-

sumed to be done by the agent is one for which the authority is required by law to be conferred by a written instrument or by a writing under seal, the parties dealing with him must take notice of that fact and they will be bound by any limitations or restrictions contained therein, although they have not had actual knowledge of them."

The doctrine of the latter part of this excerpt is applicable to the requirement of the statute about the necessary conditions of fire insurance policies wherein it is prescribed that:

"In any matter relating to this insurance, no person, unless duly authorized in writing, shall be deemed the agent of this company."

Under the sanction of this law, the plaintiff was charged with knowledge that the authority of Shankland must be in writing and hence the limits of the alleged agent's power were imputed to the former by operation of law.  In addition to this, he himself confessedly agreed in writing to the special scope of Shankland's agency.  Admittedly, the plaintiff was informed that Shankland would be the adjuster.  No further authority was conferred upon him by the letter addressed to the plaintiff and already quoted.  It is prescribed in the policy itself that the company shall not be held to have waived any provision or condition thereof or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination therein provided for.  The plaintiff knew this, because, as he said, he read the policy before the fire.  Moreover, in the document which he signed at the time the adjuster inspected the ruins, he expressly stipulated that:

"Said insured understands and agrees that the said adjuster has no authority to waive, modify or strike

91 Or.—6

from said policy, any of its terms, conditions or stipulations nor to revive the said policy should it have become void or voidable from any cause.''

Beyond this, the general scope of that agreement which he admits signing was merely that the adjuster was to investigate the facts and circumstances of the loss and if possible agree as to the amount of loss and damage, ''without reference to any other question or questions which has or have arisen or may hereafter arise under the conditions and stipulations of said policy.''.

The plain construction of this writing, which the plaintiff does not in the least attempt to impeach for fraud, mistake or any other reason, makes it manifest that the agency of Shankland was limited, within the knowledge of the plaintiff, to the mere question of ascertaining the amount of the loss, without dealing in any manner or to any degree with any other question then or thereafter to be involved between the parties. Under the stipulated limitation of the so-called agent's power, it can make no difference what the latter said respecting the proof of loss or the sufficiency for that purpose of the papers which the plaintiff signed. It is stated in Section 712, L. O. L., that:

''There shall be no evidence of the contents of a writing other than the writing itself, except in the following cases:

''1. When the original is in the possession of the party against whom the evidence is offered, and he withholds it under the circumstances mentioned in Section 782;

''2. When the original cannot be produced by the party by whom the evidence is offered, in a reasonable time, with proper diligence, and its absence is not owing to his neglect or default.''

This section closes with the rule that in the cases mentioned in the subdivisions here quoted either a copy or oral evidence of the contents of the instrument shall be produced.

Section 782, L. O. L., to which reference is made in the quoted matter above set forth, reads thus:

"The original writing shall be produced and proved except as provided in Section 712. If the writing be in the custody of the adverse party, he must first have reasonable notice to produce it. If he then fail to do so, the contents of the writing may be proved as in case of its loss; but the notice to produce it is not necessary where the writing itself is a notice, or where it has been wrongfully obtained or withheld by the adverse party."

For the plaintiff as a witness to call a paper "proof of loss" is but a legal conclusion. It is not evidence of the contents of the paper required by the Code, even if a showing had been made authorizing the admission of oral statements on that subject. It is a reasonable rule that the witness who gives substituted testimony by word of mouth in place of the writing itself should state the language thereof as nearly as possible, so that the court may determine whether it comes within the definition of the instrument in question as embodied in the policy. In *Wiseman* v. *Northern Pacific R. R. Co.*, 20 Or. 425 (26 Pac. 272, 23 Am. St. Rep. 135), the defendant was sued for the value of certain household goods claimed to have been lost by it while transporting the same over its railroad. One ground of its defense was based upon a release to a minimum valuation. It seems that the original of that document had been forwarded to an official in Chicago, Illinois; that the claim agent of the defendant at St. Paul had telegraphed that the

files in the office of the traffic manager in Chicago had been searched and that the release could not be found there. It appears that the instrument had never been in the office of the company at Portland, Oregon. The defendant then offered the deposition of the agent at the origin of the shipment in Michigan, to prove the contents of the release which it seems he had taken from the plaintiff, but this court affirmed the action of the Circuit Court in denying the right to introduce secondary evidence, on the ground that sufficient diligence to produce the original had not been shown. Other cases on this subject are as follows: *Bowick* v. *Miller,* 21 Or. 25 (26 Pac. 861); *Harmon* v. *Decker,* 41 Or. 587 (68 Pac. 11, 1111, 93 Am. St. Rep. 748); *Gladstone Lumber Co.* v. *Kelly,* 64 Or. 163 (129 Pac. 763); *Jones* v. *Teller,* 65 Or. 328 (133 Pac. 354); *Muir* v. *Morris,* 80 Or. 378 (154 Pac. 117, 157 Pac. 785).

In the present instance no attempt whatever was made to produce the original, either by calling upon the defendant by notice or upon Shankland by subpoena *duces tecum.* To sum up on this feature, the special agency of Shankland was confined to the matter of ascertaining the amount of damage and if possible to agree upon that with the plaintiff without reference to any other question. This did not authorize him to receive proof of loss nor to declare to the plaintiff that the instrument which he signed was proof of loss or sufficient for that purpose. Moreover, no showing was made allowing secondary evidence of the contents of the instrument. Even if there had been, there was no testimony to show what those contents were, so that the court might be able to determine whether the instrument amounted to a

compliance with the express terms of the policy, or supported the plaintiff's allegation that he had performed all the terms of the contract upon his part.

The question of apparent scope of authority has no place in the discussion, for it is admitted that the plaintiff not only knew but agreed in writing upon the limitations of Shankland's agency. As stated, the estoppel, even if properly pleaded, depends entirely upon the statements of Shankland, who, as the plaintiff knew and stipulated, had no authority to bind the company. To hold otherwise would be to violate the express provisions of the policy itself upon which the plaintiff relies; for it says on the face thereof, which the plaintiff read, that:

"No officer, agent or representative of this company shall have such power or be deemed or held to have waived any of such conditions, provisions and agreements, unless such waiver, if any, shall be written upon or attached hereto, nor shall any privilege or permission affecting the insurance under this policy exist or be claimed by the insured unless so written or attached."

It would also be violative of the statutory condition, on page 2 of the policy, that:

"The company shall not be held to have waived any provision or condition of the policy or any forfeiture thereof by any requirement, act or proceeding on its part relating to the appraisal or to any examination herein provided for."

As Mr. Justice RAMSEY said in *Oatman* v. *Bankers' Fire Relief Assn.*, 66 Or. 388, 400 (134 Pac. 1033, 1035):

"The rules relevant to questions of waiver prior to the enactment of the standard policy law do not apply now. So far as this statute is inconsistent with the

common law, it supersedes it.    It is the duty of courts to give effect to the statute, and not to nullify its requirements.    This statute not only imposes a penalty on insurance companies for noncompliance with its terms, but it declares in express terms that if the condition quoted, *supra,* is not complied with, the policy is void.''

The same reasoning applies' to the alleged statements of Shankland, upon which the plaintiff relies to excuse himself for not bringing the action within one year, namely, that he knew that Shankland had no authority to bind the company by any such statements.    The company cannot be estopped by any unauthorized declaration of its agent where the party urging the estoppel is aware of the limitations upon the agent's authority.    It was the duty of the court to construe the legal effect of the admitted writing: Section 136, L. O. L., and to declare that no authority existed on the part of Shankland to bind the company in the manner contended for by the plaintiff.    The terms of the agency having been admitted and agreed upon in writing, it became the duty of the court as a matter of law to declare what could and what could not be imputed to the company under such circumstances: *Glenn* v. *Savage,* 14 Or. 567, 576 (13 Pac. 442); *Anderson* v. *Adams,* 43 Or. 621, 633 (74 Pac. 215); *Baker* v. *Seaweard,* 63 Or. 350, 354 (127 Pac. 961).

For the purposes of this case it matters not whether the question arose upon a departure or the necessity of pleading an estoppel in the complaint. It was held in *Mercer* v. *Germania Fire Ins. Co.,* 88 Or. 410 (171 Pac. 412), that:

''In an action on a contract, plaintiff must prove a right to prevail under the contract, unless he alleges in his complaint a waiver on the part of the defendant

of some of the provisions of the contract or an estoppel to assert them as a defense.''

But whether we apply this doctrine as showing that the plaintiff has not proved that he fully performed the contract and that his plea of estoppel in his reply is a departure, or whether we consider the estoppel on its merits, the result is the same, for the latter contention, depending as it does on the declarations of an unauthorized agent, fails for want of proof on the merits.

The whole matter was presented to the court at the close of all the testimony by motion for a directed verdict and on the admitted terms of the policy and the stipulated limitations upon the authority of the agent upon whose declarations the plaintiff solely depends for either waiver or estoppel, the court should have allowed the motion.