In re Lonnie Ray BAGWELL, dba P & L Distributors Shake & Cedar Products; L.B. Shake Co.; Little LB Mill; and Phyllis Lorene Bagwell, Debtors.

U.S. NATIONAL COMMERCIAL CORPORATION, an Oregon corporation, Plaintiff,

v.

FOREST INDUSTRIES INSURANCE EXCHANGE, an Oregon corporation, Defendant.

Bankruptcy No. 680–06277.
Adv. No. 681–6242.

United States Bankruptcy Court, D. Oregon.

Nov. 1, 1982.

James Ray Streinz, Portland, Or., for plaintiff.

Louis Kurtz, Eugene, Or., for defendant.

### MEMORANDUM OPINION

C.E. LUCKEY, Bankruptcy Judge.

Plaintiff seeks recovery of a vehicle collision loss against defendant insurance carrier. Plaintiff made a loan to the insured and was thereafter given a security interest in a truck by the insured whose policy with the defendant included a loss payable clause for the plaintiff's security interest.

The parties have filed cross motions for summary judgment and in their memoranda and in oral argument postulate that as to the issues of liability there are no material questions of fact. Each party urges on the basis of its motion for summary judgment the Court should determine that it is entitled to relief, but defendant asserts a continuing demand for jury trial if the Court should determine it has liability to the plaintiff.

In September, 1979, the security interest and loss payable clause became effective. On or about October 19, 1979, the truck was involved in a collision accident in the state of Washington. The insured made claim

against the driver of the other vehicle and the other vehicle's insurance carrier satisfied the insured's claim. The insured therefore made no claim against the defendant for the loss. The defendant was notified of the accident on or about October 25, 1979.

On April 1, 1980 the insured party filed a voluntary Chapter 7 bankruptcy case and the plaintiff first learned of the collision in April of 1980.

On August 11, 1980, the plaintiff repossessed the remains of the damaged truck, notified defendant of their asserted claim of loss August 12, 1980, and commenced this adversary proceeding for recovery as to the loss payee on August 3, 1981.

The policy provisions required the insured to make report to the plaintiff within 90 days of any loss which might give rise to a claim under the policy. (The loss payable clause gave the loss payee an additional 60 days to make such written report if the insured did not do so within the 90 days.) The policy also provided:

"11. No suit action or proceeding for the recovery of any claim under this policy shall be sustainable in any court of law or equity unless the same be commenced within twelve (12) months next after discovery by insured of the occurrence which gives rise to the claim, provided however, that if by the laws of the State within which this policy is issued such limitation is invalid, then any such claims shall be void unless such action, suit or proceeding be commenced within the shortest limit of time permitted by the laws of such state."

In Oregon twelve month limitations have been determined lawful and reasonable. See *Gilbert v. Globe & Rutgers Fire Ins. Co.*, 91 Or. 59, 174 P. 1161, 178 P. 358 (1919). See, also, *Beck v. General Insurance Company of America*, 141 Or. 446, 18 P.2d 579 (1933).

The loss payable clause provided:
"If the insured fails to render proof of loss within the time granted in the policy conditions, such Lienholder shall do so within sixty days thereafter, in form and in manner as provided by the policy, and further, shall be subject to the provisions of the policy relating to appraisal and time of payment and bringing suit."

■ Plaintiff had knowledge of the accident in April, 1980; was provided with a copy of the loss payable clause in June, 1980; took possession of the wreckage August 11, 1980; and did not file suit until August 3, 1981. Plaintiff contends that date of the occurrence because of a practice within the industry should be the date of repossession. For that construction, however, plaintiff must read out of the policy its express definition of "occurrence". The policy definitions provide:

"When used in this policy (including endorsements forming a part hereof):

\*     \*     \*     \*     \*     \*

" 'Occurrence' means an accident, including continuous or repeated exposure to conditions which result in bodily injury or property damage neither expected nor intended from the standpoint of the insured."

To construe such language to mean "date of repossession" tortures reason.

As the court said in *Jarrard v. Continental Casualty Company,* 250 Or. 119, 126, 440 P.2d 858 at 861 (1968):

"It is, of course, the rule that if a policy of insurance is reasonably susceptible of two constructions it should be construed most favorably to the policy holder, *Wallace Co. v. State F.M. Auto Ins. Co.,* 220 Or. 520, 525, 349 P.2d 789, and that the test is what a reasonably intelligent and careful person in the position of the insured would have understood the words to mean, *Borglund v. World Ins. Co.,* 211 Or. 175, 181, 315 P.2d 158. The difficulty with applying these principles here is that the definition of 'Insured Dependent' in the policy is not susceptible of two reasonable constructions, as we think we have demonstrated, and that to give the words the meaning urged by the plaintiff is to reduce them to nonsense."

In these proceedings the lender was an established commercial institution well

aware of contractual obligations and failure to abide by them. As a lender it had the opportunity to require the borrower, or insurer, to provide it with a copy of the policy and to require a policy to be obtained the terms of which it could find appropriate. It had the best chance to avoid loss occasioned by the dereliction of the insured. The defendant is simply abiding by the terms of its contract which under the facts and law of this case it was entitled to do. As the author in *Couch on Insurance (2d)* states in Vol. 18, p. 835:

"Section 75:204 Failure of insurer to volunteer information.

"The fact that an insurer against death by accident, in various negotiations with and communications to, persons entitled to maintain an action on the policy, did not call their attention to the provision therein limiting the time within which action thereon might be brought, nor in any way indicate that it would rely on such provision, is not a waiver thereof, nor does it create any estoppel against subsequent reliance on it."

The Court can find nothing in these proceedings to support a waiver of the policy provisions or estoppel to prevent defendant from relying upon them.

After receiving a copy of the loss payable clause, the plaintiff waited approximately two months to repossess the vehicle, and still could have filed timely suit under the policy terms for about another two months which gave it a reasonable time to do so. Instead it waited almost another 14 months after receiving the loss payable clause. The defendant under these circumstances is entitled to rely on the policy terms.

Defendant also urges that failure to file a timely proof of loss claim as provided by the policy, and an exclusionary clause relating to misconduct by the insured should bar the plaintiff's recovery. Plaintiff resists these defenses, but in view of the ruling of the Court these issues need not be reached.

This Opinion contains the Court's Findings and Conclusions and pursuant to Bankruptcy Rule 752 they will not be separately stated.

Separate Judgment will be therefore entered that the defendant is entitled to summary judgment that it is not liable to the plaintiff in these proceedings.