CHARLES MEIERHOFFER, Respondent, v. W. J. KENNEDY, Appellant.

Kansas City Court of Appeals, June 26, 1920.

1. **CONTRACTS: Sale of Corporate Assets: Estoppel.** Plaintiff, defendant and S. were owners of all the assets of a corporation, each being charged on the books thereof with an amount to show the true interest of each, no stock having ever been issued. The three contracted for the sale of the assets to a new corporation; under the terms of that contract, after certain debts were paid each of the three was to receive one-third of the remainder from which was to be deducted the indebtedness of each to the corporation so as to equalize the profit of each in proportion to his ownership in the assets of the corporation: *Held*: that in an action against the defendant on the contract to recover the excess defendant retained, the plaintiff was not estopped from asserting the defendant's indebtedness to the corporation because in the contract for the sale of the corporate assets the indebtedness was listed as an asset and the assets were warranted by the plaintiff, for the reason that defendant knew that the indebtedness was not regarded as an asset passing by the sale and was not misled.

2. ————: ————: **Enforcibility of Contract with Promoter: Variation.** Where a contract for the sale of corporate assets provides for a sale for cash, and the defendants, at time of performance, acquiesce in a variation therefrom for the reason that the contract as originally made was not enforcible against the other party because he was acting as a promoter for a corporation not formed, and accept, in lieu of cash, stock in the new corporation without notifying plaintiff of the fact, the defendant is deemed to have accepted the stock as an equivalent satisfactory to the cash and will be held to account to plaintiff as if he had received cash.

Appeal from Jackson Circuit Court.—*Hon. William O. Thomas*, Judge.

AFFIRMED.

*Guthrie, Conrad & Durham* for respondent.

*H. E. Colvin, Isaac B. Kimbrell* and *Martin J. O'Donnell* for appellant.

BLAND, J.—This is an action for money due plaintiff from defendant growing out of a contract for the sale of a sand business owned by plaintiff, defendant and one Swenson. The petition is as follows:

"Plaintiff for his amended cause of action against the defendant states:

(1) That, heretofore, plaintiff, and one W. H. Caffery were copartners engaged in the sand business in Kansas City, Missouri; that thereafter, the interest of said Caffery was acquired, and plaintiff and the defendant and one Godfrey Swenson became copartners engaged in the same business at the same place; that thereafter, said business was incorporated under the name of Kansas City Sand Company with a capital stock of sixty thousand dollars ($60,000), fully paid; that for convenience and as a matter of bookkeeping, each of said parties was charged or credited on the books of said company according to his investment in said business with reference to his interest in or holdings of the capital stock of said company, whereby the mutual obligations and relations of said parties with respect to said business and each other were expressed; that in the months of November and December, 1917, plaintiff was charged on the books of said company with three thousand eight hundred forty and 12/100 dollars ($3,840.12), and defendant with twenty-three thousand two hundred eighty-three and 81/100 dollars ($23,283.81), and said Godfrey Swenson with twenty-three thousand two hundred eighty-three and 81/100 dollars ($23,283.81); that said sums, however, were not in truth and fact assets of said Kansas City Sand Company, but, as stated, evidenced facts hereinbefore alleged.

(2) That on or about November or December, 1917, one Clifford Histed, acting for and on behalf of the Stewart Sand Company, offered said Kansas City Sand Company and said parties, who were the only stockholders of said Kansas City Sand Company, the sum of seventy-five thousand dollars ($75,000) for the major part of the assets of said company, in which the charges aforesaid on the books of said company against the plaintiff, the defendant and said Swenson were not considered and have not been and are not so claimed by said Histed, or any one for whom he acted, whereupon plaintiff and defendant and said Godfrey Swenson, who were the all and only directors and stockholders of said sand company, as a condition to accepting said offer, agreed among themselves as follows:

(a) That said offer of said Clifford Histed be accepted.

(b) That there be paid out of said sum of seventy-five thousand dollars ($75,000), the sum of forty-two thousand dollars ($42,000), due from said sand company to the Commerce Trust Company of Kansas City, Missouri.

(c) That each of said parties collect of and from said Clifford Histed the sum of eleven thousand dollars ($11,000.),

(d) That the defendant and said Swenson each pay plaintiff such sum as would equalize his investment in said sand business to and with plaintiff and as though each of said parties had in fact paid into said company the amount, including interest thereon to December 31, 1917, with which he was charged on the books of said company and distribution had then been made equally between them, so that the net profits realized by each based on the books as aforesaid would be equal.

(3) That in pursuance of the agreement so made, and under the terms thereof, said assets of said Kansas City Sand Company were sold as aforesaid for the sum of seventy-five thousand dollars ($75,000), and said

note due said Commerce Trust Company in the sum of forty-two thousand dollars ($42,000) was paid and that each of said parties collected of and from said Histed the sum of $11,000, or an equivalent thereof satisfactory to him; that which was actually received by defendant being unknown to plaintiff, and the defendant became indebted to the plaintiff in the sum of six thousand eight hundred and 46/100 dollars ($6,800.46.).

(4) That plaintiff has demanded said sum of the defendant, but the defendant has failed, neglected and refused to pay the same or any part thereof.

Wherefore, by reason of the premises, plaintiff prays judgment against the defendant for the sum of six thousand eight hundred thirty-six and 70/100 dollars ($6,836.70), together with interest thereon, and for his costs in this behalf expended."

The answer consisted of (1) a general denial, and (2) a plea of estoppel, as follows: That there was a contract entered into by the Kansas City Sand Company, plaintiff, defendant and Swenson, these persons being the only stockholders in said company, and one Histed wherein the sand company sold to Histed for $75,000 its property except certain ledger accounts receivable; that the property sold to Histed consisted in part of the indebtedness shown on the books of the Kansas City Sand Company, which included $3,840.12, which the books showed to be due from plaintiff, and $23,283.81 due from defendant and Swenson each, all of which items are the same as those mentioned in plaintiff's petition; that by said contract said amounts due were assets sold and delivered to said Histed and that plaintiff, defendant and Swenson warranted to defend the title to such assets to Histed; that as a part of said contract a separate contract was entered into by the defendant with Histed, with plaintiff's consent, that defendant would not for a term of ten years enter into the sand business. Defendant says in his answer that by reason of the foregoing "plaintiff is estopped, after having induced defendant" and Swenson "to make a

contract and deed of conveyance by which they warrant-
ed the title to said assets to said Histed," and to "now
assert that" said charges on said books are "not in
truth or in fact assets of the Kansas City Sand Com-
pany" and did not pass to Histed under the contract,
and that to permit him to assert that said charges on
said books were not so sold "would be to permit him to
use this court for the purpose of perpetrating a fraud."
The trial, which was had before a jury, resulted in a
verdict and judgment for plaintiff in the sum of
$6836.70.

The facts leading up to the contract executed be-
tween the Kansas City Sand Company, plaintiff, defend-
ant and Swenson, on the one hand, and Histed on the
other, as described in plaintiff's petition, are about as
follows:  Plaintiff and one W. H. Caffery were en-
gaged in the sand business in Kansas City, Missouri,
under the name of the Kansas City Sand Company.
Plaintiff had in the business about $16,000 and Caffery
about $14,000.  Neither drew any salary for two years
and all the profits were kept in the business.  The
business was profitable.  The concern owed the South-
west National Bank of Commerce $25,000 and plaintiff
had given his individual collateral as security therefor
in the sum of $17,000.  However, some dissatisfaction
or disagreement arose between plaintiff and Caffery
and plaintiff agreed to buy Caffery out on the basis of
paying his $20,000 and assuming all the debts and the
collection of all accounts.  Plaintiff not being able to
raise the required amount to buy out Caffery, went to
the defendant who interested Swenson and negotiations
between plaintiff, defendant and Swenson were had
which finally resulted in an agreement that a company
should be formed to be known as the Kansas City Sand
Company, incorporated, with a capital stock of $60,000;
that each was to have one-third of the stock, plaintiff
agreeing to sell defendant and Swenson a third of his
half;  that the $20,000 necessary to buy out Caffery
should be obtained by the three going to the Commerce

Trust Company and signing a note for that amount, and that each of the three should be charged on the books of the company to be organized with the par value of the stock, or $20,000, against which respondent was to have a credit for $16,000 that he had in the business. Neither defendant nor Swenson had any credit on the books in the sand company and neither paid anything for the stock, but it was agreed that the stock should be paid for out of the individual profits to be earned by the company. In pursuance of this arrangement the $20,000 necessary to purchase Caffery's interest was borrowed from the Commerce Trust Company by a note given therefor by plaintiff, defendant and Swenson. The Commerce Trust Company took up the old obligation of Caffery and plaintiff in the sum of $25,000, which was due the Southwest National Bank of Commerce, and the three signed their note to the Commerce Trust Company for that amount. This was about May 1, 1916. Plaintiff took the $20,000 with which he bought the interest of Caffery for defendant and Swenson as agreed.

At the time of the incorporation of the sand company the bookkeeper of the same and the bookkeeper employed by Swenson Construction Company were directed by an agreement between the three parties to open up a set of books expressing the transaction between the three parties to the contract, which was done. In pursuance of their instructions the bookkeepers opened the books of the Kansas City Sand Company, incorporated, with charges against plaintiff of $3840.12 and against defendant and Swenson, $23,283.81 each. This was to express the mutual obligations and relations of said three parties in the corporation formed. However, these book entries expressed only the relative investments of said parties, and while they purported to show that each of said parties were indebted to the company in said sums, respectively, the facts were that neither defendant nor Swenson had paid any money or property into the corporation and that the assets of the

same were composed of the assets from the partnership of plaintiff and Caffery, which paid in full the capital stock of the new company. The said charges, therefore, strictly speaking, were not assets of said corporation. Apparently no stock was issued.

In the fall of 1917 while business was good war conditions began to affect the business and the company thereafter was not making money. Thereupon negotiations were initiated to dispose of said business and assets. An option for $75,000 was given Mr. Houlehan from which nothing developed. Then followed negotiations with Clifford Histed, who was acting for the Stewart Sand Company, an unincorporated company, which was to be organized with a capital stock of one million dollars. Respondent had no part in the negotiations with Histed, they were conducted by defendant and Swenson. The contract mentioned in the pleadings was drawn up with Histed on November 22, 1917. It conveyed the property of the company, less certain ledger accounts receivable, for $75,000, but the contract was not consummated until the first day of December, 1917. The contract provided that certain assets of the company that were to be found in an itemized statement of accounts receivable and bills payable, which were attached to the contract, were conveyed to Histed. This itemized statement contains a long list of items in which are included as assets of the company the $23,283.81 shown by the books of the Kansas City Sand Company to be due from defendant, and Swenson each, and $3840.12 due from plaintiff. Plaintiff testified that he did not see these items in the statement nor did he know of their presence. Histed testified that neither he nor his assignee had ever made any claim that these items were assets of the Kansas City Sand Company which were acquired by the contract and that there was no such claim being made at the time of the trial. There is no contention on the part of defendant that it was intended that such items were to be assets of the Kansas City Sand Company.

When the deal with Histed came up for consideration plaintiff was advised that it was upon the basis that Histed was to pay $75,000 in cash. Between November 22 and December 1, 1917, plaintiff instructed the bookkeeper of the Kansas City Sand Company to make a statement of the personal accounts of himself, defendant and Swenson, including interest, it having been agreed that the interest should be figured to December 31, because it was realized that the deal would not be closed or straightened out before that time. The bookkeeper in pursuance of said instruction did, in pencil, make a statement which he gave to the stenographer who made three copies. This statement showed what the respective parties were to realize out of the sale of the concern, $75,000 cash, less the sums owed the Trust Company, and was based upon the relative interests that the parties had in the concern as shown by the books as above described. Plaintiff took this statement to defendant and Swenson before the contract with Histed was signed and they all agreed to sell to Histed upon an individual settlement as between themselves, based upon said statement. Plaintiff testified "the settlement was based upon this statement here where the debits on the books of the company were to be imaginarily paid—or rather the different accounts were to be added together, and that, together with the $33,000 that was the balance that we were entitled to after the $42,000 was paid, would make a sum of eighty-odd thousand dollars. That divided by 3, would give us our proportion that we were entitled to." This would give each of the three approximately $28,00 from which was to be deducted each one's individual debit account, which would give the net to each of the parties. Defendant contends that plaintiff afterwards contradicted his testimony that there was such a settlement by stating that there were only two contracts between the three parties and that they were entered into when Caffery was bought out. We think it apparent that plaintiff meant that there were only two contracts at that time and did not have in mind the subsequent transactions.

At the time of the agreement of settlement there was due the Commerce Trust Company $42,000 which indebtedness represented the $20,000 borrowed by defendant and Caffery and $22,000 owing the bank on the indebtedness of plaintiff and Caffery that was taken up by the Commerce Trust Company from the Southwest National Bank of Commerce. Three thousand dollars of the $25,000 loan of the Trust Company that had been taken up from the Southwest National Bank of Commerce had been paid. When the whole indebtedness was paid there was left $33,000 in cash to be divided between the parties, regard being had to the relative investments of the parties in said corporation.

In addition to the above, each of said parties had made loans to the Kansas City Sand Company, incorporated, which it was agreed were to be paid from accounts not sold to Histed, which were to be collected by the Stewart Sand Company. Interest therefore was figured on this as on the individual debit accounts aforesaid, and by so doing, as shown by said statement prepare by the bookkeeper, plaintiff had a debit account of $4127.64, defendant, of $24,566.26, and Swenson, of $24,494.77. If these items were paid into the company (or imaginarily paid, since they were not assets of the company but evidenced the mutual obligations and relations of the parties), there would have been realized a sum for distribution in the amount of $53,188.67, to which there was to be added the sum of $33,000 to be realized from the sale to Histed, making a total of $86,188.67 for distribution. This divided by three, gave each party, or stockholder, $28,729.56. But none of said parties, as a fact, paid the sum with which he was charged on the books so that the amount charged to each should be deducted from the respective amounts aforesaid. In the case of plaintiff it was $28,729.56 less $4127.64, making a net sum of $24,601.92; in the case of defendant it was the sum of $28,729.56 less $24,566.26, leaving a net sum of $4163.30, and in the case of Swenson, $28,729.55 less $24,494.77, leaving a net sum of $4234.78; these three

net items make the sum of $33,000. All of this was shown
in detail in the statement made by the stenographer at
plaintiff's request, and which was agreed to by defendant
and Swenson.

However, Histed understood that the $33,000 was to
be divided into three parts, or equally divided between
the three stockholders, so that each would get $11,000,
consequently the amount which defendant and Swenson
respectively owed plaintiff under the agreed settlement
and which equalized the interest in the investments of
the parties as shown by the books, was in defendant's
case the difference between $11,000 and $4163.30, or
$6836.70, being the amount sued for, and in Swenson's
case the difference between $11,000 and $4234.78, or
$6765.22. Plaintiff sued Swenson in another case for this
latter amount and recovered judgment for the same.
There was an appeal in the Swenson case which will be
disposed of by a memorandum opinion, the points in the
two cases being the same.

When it came time to execute the contract with Hist-
ed, the latter desired plaintiff, defendant and Swenson
to take stock in the Stewart Sand Company, to be incor-
porated, for the $11,000 each that was to be paid them
in cash under his contract with them. Plaintiff did not
know of this. Some time previous thereto, presumably at
the time of the Houlehan option, plaintiff had stated that
he would not accept stock in a corporation for his share
but would have to have his part in cash. Histed testified
that he did not think that he would have gone through
with the contract if he had been required to pay each of
the three parties $11,000 in cash. Defendant's evidence
shows that he was very anxious to get out of the sand
business, that the company was not making money and
that he was particularly anxious to liquidate the indebt-
edness to the Commerce Trust Company, he being one
of the makers of the notes evidencing the same. Histed
asked defendant and Swenson each to take $15,000 of the
stock of the Stewart Sand Company, $11,000 of which
stock was to be paid for by the amount due each under

the contract, and $4000 to be paid by each in cash so that Histed would have $8000 in cash of the $11,000 that he needed to pay plaintiff. Defendant's evidence shows that in order to close the deal they agreed to this request of Histed and each subscribed for $15,000 of the stock in the Stewart Sand Company and each paid $4000 in cash to Histed. On December 1, the day the contract was signed, Histed paid plaintiff his $11,000 in cash and said to defendant and Swenson, "It will be all right to settle with you tomorrow, won't it?" and they replied, "Yes." It is admitted that plaintiff was not aware of the fact that defendant and Swenson were not getting $11,000 in cash each but were each getting $15,000 in stock in the corporation ($11,000 of which represented what was coming to each under the contract). Defendant testified that the reason plaintiff was not told of this circumstance was that plaintiff had already stated that he would not take stock.

It is claimed by the defendant that plaintiff is estopped by the terms of the contract, in which he conveyed the assets of the sand company to Histed, from founding his action on the items of indebtedness, to-wit, $3840.12, that the books of the sand company showed was owing by plaintiff, and $23,283.81 that the books of the company showed that defendant and Swenson each owed the company, which he transferred and warranted in that contract as assets of the Kansas City Sand Company. We think there is no merit in this contention. In the first place, the answer fails to plead any facts which would constitute an estoppel. Herman in his work on Estoppel and Res Judicata, under the heading of Instruments not under seal, Vol. 2, secs. 991, 1115, 1116, states—

"These estoppels arise where a party by his words or conduct willfully causes another to believe in the existence of a certain state of things, and induces him to act on that belief and so alter his own previous position. . . . It can therefore only be set up and relied

upon by a party who has been actually misled to his injury.''

We fail to see how there can posibly be an estoppel in this case. There is no allegation in the answer that defendant at the time of the contract with Histed did not know that these items were in fact not assets of the Kansas City Sand Company or that they were deceived or misled in any way by reason of plaintiff signing the contract. Defendant and Swenson had the same means of knowing the truth as plaintiff had and each of them signed the contract along with plaintiff. They do not contend even now that they believed the recitation in the contract to the effect that these items were assets of the Kansas City Sand Company. In fact, Swenson's attorney testified that before the contract with Histed was signed he became somewhat alarmed that the contract showed such a large amount of indebtedness against Swenson transferred to Histed, and he went to see Histed in reference to the matter and Histed said, ''Don't worry about that, that account would never be enforced by him or his assigns.''

It is contended by the defendant that as the record shows that Histed was not acting for himself but only as a promoter for an unorganized corporation, that there was no way for defendant and Swenson to enforce the contract against Histed wherein Histed had agreed to pay said $33,000 in cash, and that in order to consummate the transaction it was necessary for them to take stock in the corporation to be formed, which they testified that they were loath to do, that they desired the cash and not the stock. It is also contended that as the contract was drawn up on November 22d and was not signed until December 1st, that it amounted to nothing more than an option given by Histed, which could not be enforced by them but that they were compelled to take the stock in order to close the transaction, and as they did not receive cash as was contemplated in the agreement between them and plaintiff wherein plaintiff was to receive the amount he claims was due him under this agreement, but

received something else which they say was of much less value, plaintiff is not now in a position to recover the amount that would have been due him had Histed gone through with the contract as it was originally contemplated. Defendant insists that by reason of the changed circumstances, that is, that the contract with Histed that was originally drawn and upon which the agreement constituting plaintiff's claim and likewise his cause of action is founded, was not consummated but that some other agreement was made with Histed, plaintiff is not entitled to recover.

Whether the agreement with Histed before it was finally consummated amounted to no more than an option we need not say, for the reason that we may assume for the purposes of the case that it was a contract that was not binding upon the corporation to be formed until it was ratified by that corporation (Histed appearing in the contract only as a promoter and therefore not personally liable), and that defendant and Swenson were not in a position to enforce the contract. However, we do not think this would make any difference. Plaintiff understood and had an agreement with defendant and Swenson to the effect that the sale which closed out plaintiff's interest in the concern was to be for cash and that he was to receive over $24,000, while the defendant and Swenson were to receive only a little more than $4000 each. Defendant and Swenson instead of acquainting plaintiff with the fact that they could not get the contract consummated as it was contemplated, went ahead and closed the contract leaving plaintiff under the impression that it was closed under the original contract with Histed for cash and upon which the agreement between the three parties was founded. Defendant and Swenson procured plaintiff's signature to the contract with Histed under such impression and they are now claiming, in effect, that because they did not get cash plaintiff has unwittingly sold out his interest for less than half of what he was entitled to get. Under such circumstances whether the stock that defend-

ant and swenson received was equivalent to $11,000 in cash or not, as a matter of fact, as a matter of law it was such equivalent and one that was satisfactory to them. Defendant and Swenson, not having acquainted plaintiff with the true facts of the situation and electing to consummate the transaction by taking stock instead of cash, must be held to have received that which was satisfactory to them as an equivalent of cash.

It is insisted that the petition fails to state a cause of action on account of the allegation contained therein that "each of said parties collected of and from said Histed the sum of $11,000, or an equivalent thereof satisfactory to him; that which was actually received by defendant being unknown to plaintiff;" that such allegation was not a direct and positive allegation of any fact but a mere statement or conclusion and, therefore, raised no issues as to whether that condition precedent (that is, the receipt of the money by defendant) had been met. We think that the allegation complained of was sufficient to raise an issue on the question, for the reason that it was an allegation of the ultimate fact. It was not necessary for plaintiff to allege what was actually received by defendant which constituted an equivalent satisfactory to the defendant, for the reason that it made no difference what it was that defendant received, whether a house, a farm, or stock in a corporation or what was its value, what he received was the equivalent of cash as a matter of law.

We agree with the defendant that the petition is not based upon an account stated or is it for money had and received but it is a suit on a contract wherein the parties were selling out a business in which they had been engaged and in which their interests were somewhat complicated, and in which contract they agreed as to what such interests were for the purpose of the sale and the division of the proceeds of such sale among themselves. It is plainly a suit upon a contract. The contract was supported by a sufficient consideration, to-wit, the mutual agreement of the parties

settling their mutual interests and agreeing as to how the proceeds of the sale should be divided among themselves. The prior agreements relating to defendant and Swenson entering into the business and what interest they should have therein, were merged into the contract sued upon. The suit was properly brought upon the new contract. [Lanitz v. King, 93 Mo. 513, 519; 9 Cyc. 593.]

It was not necessary for the petition to allege the details of the transaction between the parties leading up to the contract sued upon. What plaintiff alleged in reference to such matters are pleaded by way of inducement and are not constitutive of the cause of action. Much evidence was introduced, without objection from either side, showing what those transactions were, no doubt, for the purpose of throwing light on plaintiff's contention that the contract sued upon was actually entered into. Defendant and Swenson denied that agreement, that is, that plaintiff took the statement, prepared at his request by the bookkeeper of the sand company, to defendant and Swenson and that it was agreed by all that such statement should constitute the basis of settlement between the parties in selling out to Histed. No doubt, the evidence leading up to this agreement was introduced by common consent to show the likelihood or unlikelihood of plaintiff's contention that the contract sued upon was made. Of course, these facts throw great light upon this subject but they were not constitutive of plaintiff's cause of action, but were admissible in evidence as shedding light on the cause of action pleaded.

There was no error in plaintiff's instruction No. 1. It follows the wording of the petition. There was no error in its failure to have the jury find what were the agreements between the parties as to their respective interests in the concern prior to the making of the contract sued upon. From what we have already said it is apparent that the petition raises no issue as to such matters. From what we have said it was not necessary

for the instruction to submit the question as to whether the stock that was received by defendant in lieu of cash was equivalent thereto or was satisfactory to the defendant. As a matter of law it was the equivalent of $11,000 in cash and had to be satisfactory to the defendant.

It is stated that plaintiff adduced some evidence tending to support the verdict but it is contended that such evidence was not substantial for the reason that the preponderance of the evidence against the verdict is so strong as to raise a presumption of prejudice, corruption or gross ignorance on the part of the jury. There is clearly nothing in this contention.

The judgment is affirmed. All concur.