## L. L. MAIER, Respondent, v. THOMAS J. WALLACE, J. R. COOK and JAMES COOK, Appellants.

### In the Kansas City Court of Appeals, November 6, 1922.

1. **PRINCIPAL AND AGENT: Authority: Evidence Held Sufficient to Submit Question to Jury as to Whether Bank had Authority to Collect Rent for Plaintiff.** Evidence that plaintiff said, after rent note became due, that he had not received any rent on farm, but that the boys at the bank were looking after it for him and that they had rented it for him, *held* sufficient evidence to go to jury as to whether the bank had authority to collect the rent on behalf of plaintiff.

2. **LANDLORD AND TENANT: Remedy for Purchase of Grown Crop: Under Statute Landlord has Remedy Against One Who Buys a Crop Grown upon Leased Premises with Knowledge of that Fact, and Cause of Action Accrues Moment the Crop is Purchased.** Under section 6893, Revised Statutes 1919, landlord is given a cause of action against purchaser, knowingly buying a crop grown upon demised premises, and the cause of action accrued in favor of landlord the moment the wheat grown upon leased premises was purchased.

3. ————: **Waiver: Estoppel: Where Purchasers of Wheat Crop were not in Anywise Injured by Statements Made to Them by Landlord, Held Landlord was not Estopped Thereby from Asserting Any Right He Had Against Purchasers.** Where landlord made statements to purchasers of wheat crop grown upon his land by tenant that he was not looking to purchasers for his money, but to a bank which had rented the land for him, and that he was secured by a chattel mortgage, the purchasers not being in anywise injured by the statements, *held* such statements were insufficient to constitute a waiver of landlord's right to sue purchasers for value of wheat, nor as estopping landlord from asserting any right he had against puchasers.

4. **WAIVER: Estoppel: For There to be an Estoppel Person Asserting it Must Show That He was Injured by Conduct of Adversary.** In order for there to be an estoppel the person asserting it must show that he was injuriously affected by the conduct of his adversary.

5. ————: ————: **In Some Cases There May be Waiver Without Any Consideration to Support it.** In some cases, there may be a waiver without any consideration to support it.

Maier v. Wallace and Cook.

6. **LANDLORD AND TENANT:** Evidence: Voluntary Statements of an Intention not to Insist upon Rights, Made Without Any Consideration or Injury to Persons to Whom Made, Held not Binding. Where landlord's statements, to purchasers of wheat crop grown upon his land by tenant, to the effect that he was not looking to them for payment of the value of the wheat sold, but to a bank which had rented the land for him, and that he was fully protected by a chattel mortgage, were made under circumstances where landlord was not called upon to speak, and purchasers were not injured thereby, or caused to change their position, *held* to be mere voluntary statements of an intention not to insist upon his rights, made without any consideration, without any injury to purchasers, and not binding upon landlord.

Appeal from the Circuit Court of Nodaway County.— *Hon. John M. Dawson*, Judge.

AFFIRMED.

*Ellis G. Cook* for respondent.

*Wright & Ford* for appellants.

BLAND, J.—This suit was brought under section 6893, Revised Statutes 1919, providing a remedy in favor of the landlord against one who buys a crop grown upon demised premises with knowledge of that fact. At the close of the evidence the court gave an instruction which amounted to a peremptory one to find for plaintiff, resulting in a verdict for plaintiff in the sum of $419.60, and defendants have appealed.

The facts show that plaintiff owned a farm in Nodaway County, Missouri, consisting of eighty acres. In the spring of 1920 plaintiff directed the officers of the Jackson Bank, located in a near-by town, to lease his farm. The bank rented the farm to Pfeiffer and Turpin who took possession upon the 1st day of March, 1920. A written lease was prepared by the bank, signed by the lessees and afterwards signed by plaintiff. At the time of the execution of the lease a note in the amount of the rent was given by the tenants to become due January 1, 1921. During the summer of 1920 defendants as partners

purchased some wheat grown on the premises by Pfeiffer and Turpin, paying therefor the sum of $419.60. At the time of the purchase defendants knew that the wheat was grown upon the land of the plaintiff and that the land had been leased to Pfeifler and Turpin. Defendants gave Pfeiffer and Turpin a check for the purchase price of the wheat, which was left at the bank on deposit in the names of the tenants. At this time the rent note given plaintiff was also on deposit at the bank. Defendants offered to prove that at this time Pfeiffer and Turpin owed the bank certain sums of money which were represented by notes held by the bank and that shortly after the money was deposited Pfeiffer and Turpin went to the bank and asked that the money that had been received by them be applied on the rent note; that the bank told them that this was not necessary as the rent note was not due and asked that the wheat money be applied on the notes due from the tenants to the bank. Thereupon the tenants permitted and allowed the bank to apply the money upon their indebtedness to it. This offer was refused.

There was evidence that plaintiff said to one Hamm, after the rent note became due, that he had not received any rent on the farm; ''that the boys at the bank were looking after it for him and that they had rented it for him.'' We think this was sufficient evidence to go to the jury as to whether the bank had authority to collect the rent on behalf of the plaintiff. There was evidence tending to show, although it was contradicted by plaintiff, that some time after these transactions plaintiff told defendant Wallace that he held the bank responsible for the rent; that he did not look to Pfeiffer and Turpin for it and that ''it was all right for them (the tenants) to pay it'' to the bank. Later in another conversation plaintiff told Wallace that he had been to the bank and found that the bank had a mortgage on the property of Pfeiffer and Turpin securing the rent ''and that it was all right.'' Afterwards and shortly before suit was filed plaintiff said to Wallace to the effect that the bank had nothing

to do with the rental of the property and that he was looking to the defendants for the money for the wheat.

It is insisted that the court erred in giving the preemptory instruction for plaintiff and in excluding the offer of proof heretofore mentioned. Defendants insist in their argument that the bank was the agent of plaintiff for the purpose of collecting the rent but it is admitted that the fact that it persuaded the tenants to pay an obligation owing to it by them when the tenants offered to pay the proceeds of the wheat on the rent note, would not amount to an estoppel. However, it is contended that the evidence excluded was material to corroborate Wallace in his testimony that plaintiff told him that the bank was responsible to plaintiff and that he was looking to the bank for his rent. So the question as to whether the court materially erred in excluding the testimony is settled in favor of the court's ruling if the statement of plaintiff that he was looking to the bank is no defense to the suit. However, it is claimed that the statements claimed to have been made by plaintiff to Wallace constitute a waiver on the part of plaintiff of his right to look to defendants for the payment of the value of the wheat bought by them. In this connection it is argued that the lien was given to plaintiff by section 6885, Revised Statutes 1919, upon the crop for his rent continued although the wheat was sold, and that plaintiff had a right to relinquish or abandon his rights as a lien-holder; that plaintiff could waive his lien by authorizing his tenants to sell the wheat prior to its selling and consequently that he could ratify the acts of the agents in selling the same after the sale was made.

The statute gives a cause of action to the landlord against the purchaser for the value of the crops with knowledge of the fact that the crop was grown upon demised premises, and therefore a cause of action accrued in favor of plaintiff the moment the wheat was purchased by the defendants. [King v. Rowlett, 120 Mo. App. 120; Williams v. DeLisle Store Co., 104 Mo. App. 567.] There is no contention that plaintiff consented to the sale of

the wheat prior to its purchase by the defendants. It may be that a landlord, where the crop has been sold without his consent or permission, has the election to receive from the tenants the amount realized from the crop in full discharge of what was coming to him, or to sue the purchaser of the crop as provided by the statute. There is no evidence or offer of testimony in the record that plaintiff or his agent, the bank, actually received from anyone any part of the purchase price of the wheat. The question remains as to whether plaintiff by making the statements claimed to have been made to Wallace to the effect that he was looking to the bank for his money, that he was secured by a chattel mortgage, and that he did not expect to hold the defendants, waived his right to sue the defendants for the value of the wheat, or is estopped from asserting any right that he had against the defendants.

It is stated in Fairbanks, Morse & Co. v. Baskett, 98 Mo. App. 63, 64—"Waiver depends on what one intended to do himself; estoppel rather on what he caused his adversary to do."

It is universally held that in order for there to be an estoppel the person asserting it must show that he was injuriously affected by the conduct of his adversary. [Hayes v. Manning, 263 Mo. 1, 46; Meierhoffer v. Kennedy, 204 Mo. App. 351, 362.] The difference between waiver and estoppel is often apparently unreal and shadowy and it is sometimes extremely difficult to distinguish between them. It was stated in Hayes v. Manning, supra, l. c. 46—

"An estoppel most briefly stated is a previous act which precluded denial. While difficult at times to distinguish estoppel from waiver, these distinctive differences may be noted; Waiver, as defined, is the voluntary surrender of a right, while estoppel is the inhibition to assert a right from the mischief that has followed; waiver involves knowledge and intention, while estoppel may arise where there is no intention to mislead; waiver depends upon what he himself intends to do, while estoppel

depends rather upon what he has caused his adversary to do; waiver may affect the other party beneficially, while estoppel results from an act which operates to the injury of the other party; waiver does not imply that one has been misled to his prejudice, while estoppel always involves this element. In short, waiver may be created by acts or declarations insufficient to create an estoppel.''

The record is barren of any proof or offer of proof that defendants were in any wise injured by the statements claimed to have been made by plaintiff to them, so there could be no estoppel in the case. While suggestion is made by defendants that they could have proceeded against the tenants, or otherwise, had the statements not been made, no facts are shown in the record given rise to any cause of action in favor of defendants against anyone nor that defendants ever intended to sue anyone, nor is there anything to show that defendants cannot now proceed against the tenants if they ever had a cause of action against them.

It has been stated that there can be no waiver unless there is a consideration to support the same but it is now well established in this State that there may be in some cases a waiver without any consideration to support it. [Hayes v. Manning, supra, l. c. 47; Fulkerson v. Lynn, 64 Mo. App. 649; Wimp v. Early, 104 Mo. App. 83, 90; Roberts v. Hodges, 222 S. W. 859, 862.] In Fairbanks, Morse & Co. v. Baskett, supra, l. c. 64, it is said, ''. . . where substantial rights are involved, we apprehend that a waiver must be supported by a consideration to be valid.'' In the case at bar the statements claimed to have been made by plaintiff to Wallace to the effect that he was not looking to defendants for payment of the value of the wheat sold, that he was looking to the bank and was fully protected by a chattel mortgage, were made under circumstances where plaintiff was not called upon to speak. The statements are not shown to have injured defendants a particle, they did not cause defendants to change their position. Under the circum-

stances they could not be said to be other than mere
voluntary statements of an intention not to insist upon
his rights, made without any consideration, without any
injury to the defendants and not binding upon plaintiff.
[27 R. C. L. 909, 910; 40 Cyc. 263, 264, 265, and notes;
Crandall v. Mosten, 50 N. Y. Suppl. 145; Bank of Neely-
ville v. Lee, 196 Mo. App. 496, 501; Savings Co. v.
Hughes, 62 Mo. App. 576.]

From what we have said the court was right in
giving the peremptory instruction to find for plaintiff,
in excluding the offer of proof and refusing the instruc-
tions offered by the defendants.

The judgment is affirmed.   All concur.