This bill is filed by the vendees under a contract of sale of lands against the vendors and seeks to impress a lien on *Page 514 
the lands in question for the down money and search fees on the ground that the contract provides for a conveyance clear of all encumbrances and that an examination of the title showed the premises subject to certain building restrictions which have not been removed. It is admitted by the defendants that these restrictions are an encumbrance on the land, and would warrant a rescission of the contract except for the fact that the condition of the contract providing for a conveyance clear of encumbrance, so far as violated by these restrictions, has been waived by the complainants.
The defendants, the vendors, filed a counter-claim asking for the specific performance of the contract on the ground that they were ready, willing and able to perform in accordance with the terms of the contract, except for the restrictions, and that these restrictions were waived by the purchasers. At the final hearing it was admitted by all parties that there was but a single question of fact to be submitted to the court for decision, namely, that of waiver of the building restrictions, and the case was tried on this theory.
The facts as I find them from the testimony are as follows: The contract of sale was dated December 17th, 1925, and provided for settlement on February 1st, 1925. On January 28th, Mr. Herman, who was acting for the complainants, the vendees, wrote to Mr. Becker, who represented the vendors, asking for an extension of the time for settlement until February 15th. There appears to have been no written reply to that letter, at least none was offered in evidence. Under date of February 9th, 1925, Mr. Herman wrote to Mr. Becker advising him that it would be impossible for him to close title before February 15th, but that he would be ready on that date. In that letter he called attention to the building restriction in question and said: "I have not had a chance to take this restriction up with my clients so I cannot tell whether or not they will raise any serious objection to it." After the receipt of this letter, Mr. Becker called Mr. Herman on the telephone and had a conversation with him with respect to the building restrictions and other title exceptions mentioned in the letter. Mr. Herman then, in effect, told Mr. Becker that no objection would be made to the restrictions *Page 515 
and Mr. Becker at that time made a note on the margin of the letter opposite the paragraph referring to them, "Don't apply." As a consequence of this conversation Mr. Becker paid no further attention to these restrictions. Subsequent negotiations between the attorneys of the respective parties resulted in a further postponement of the day of settlement to February 23d and by agreement time was then made of the essence of the contract. Mr. Aron, one of the vendees, was then in Florida, but he had fully authorized his partner, Mr. Wiederhorn, to act for him. Complainants' solicitor instructed defendants' solicitor to prepare the deed in favor of Wiederhorn alone. On February 23d all parties except Mr. Aron met at Mr. Becker's office for the purpose of closing title. The deed prepared and executed in accordance with the instructions of complainants' solicitor was produced and what immediately followed is best stated by Mr. Becker in his testimony, which was uncontradicted, and which is as follows:
"As soon as Mr. Herman came in I said, `Now, it is definitely understood there is no question of restrictions?' He said, `certainly.' I said, `Well, here is the deed.' He took the deed that I had prepared, which was signed on the fifteenth, the day originally set for closing of title, and postponed it — the original date was February 1st. He examined the deed, approved of it, and said it was perfectly satisfactory, and he asked Mr. Wiederhorn for a certified check and Mr. Wiederhorn handed him a certified check, and he put the certified check on top of the deed and laid them aside. He said, `Now, let us go into the figures of cost.' I gave him a yellow paper with a memorandum on it, and I drew up one myself, and I have got here a copy of the figures that we went into."
During the course of the adjustment calculations a question arose involving a half-month's rent of one of the tenants, which resulted in an impasse. Mr. Wiederhorn then suggested a postponement of settlement for two days in order to give him an opportunity to consult Mr. Aron about this question of rent and an adjournment was taken accordingly. No other question respecting the title was raised at this meeting. The following day Mr. Becker received from Mr. Herman the following letter: *Page 516 
 "Abraham M. Herman Counselor-at-Law 308 Main Street Orange, N.J. Telephone 9190
FEBRUARY 23, 1926. William N. Becker, Esq. 185 Market Street, Newark, N.J.
Dear Sir:
I have your letter of February 19, setting a date of closing for the premises known as 22-24 Rowe Street, East Orange, from the Rialto Realty Co. to Sol Aron and Jacob Wiederhorn in accordance with the terms of the contract dated December 17, 1925. This is satisfactory to my clients, and we will be there at three o'clock on Thursday afternoon prepared to take title in accordance with the terms of the contract aforesaid.
I wish to call your attention again to the restrictions of record as set forth in Book Y-64 of Deeds for Essex County, page 593. I trust that same will be cleared before we are ready to close.
Yours very truly, H-G ABRAHAM M. HERMAN."
The envelope containing this letter, which was also introduced in evidence, was postmarked February 23d 1926, eight P.M. This was the evening of the day of the meeting which resulted in animpasse. On February 26th, 1926, Mr. Herman wrote to Mr. Becker advising him that his clients elected to rescind the contract on account of the restrictions and informed him that both of the defendants would be held strictly accountable in damages for breach of the contract.
The deed which was prepared for tender contained a provision that the conveyance was "subject to restrictions and zoning ordinances on record, if any." The building now constructed on the land in question does not violate the building restrictions, and they expire by their own limitation in 1928.
The complainants rely mainly on the case of Goldstein v.Erlich, 96 N.J. Eq. 52, in support of their contention that they had a right to rescind any time before final settlement, claiming the right to change their minds with respect to the restrictions on the authority of that case. There Vice-Chancellor Backes said: *Page 517 
"There were negotiations, and it was arranged that the complainant would take title upon the defendant giving an indemnity bond. The complainant claims that the defendants refused to give the bond, while the defendants insist that the complainant refused to take it. I need not decide this issue of fact. The complainant was entitled to the property according to the terms of the contract. He was not bound to take the bond. If he, in fact, consented to take it in lieu of a good title, he had the right to change his mind."
This language is seized upon in support of the complainants' contention, but I do not understand that case to decide the point here in issue at all. The question of waiver was not there involved. What was involved was a new contract in substitution of the original, and the new contract was without any consideration. Of course, the parties had a right to stand on the real contract. Here no new or substituted contract is involved; there is merely a question of the waiver of one of the conditions of a contract.
Practically all other authorities cited by both complainants and defendants involved the question of estoppel and not of waiver. While the terms estoppel and waiver have been frequently and loosely used interchangeably, they are not convertible terms.27 R.C.L. 905. "Waiver" is the voluntary relinquishment of a known right, while "estoppel" consists of a preclusion which in law prohibits a party from alleging or denying a fact in consequence of his own previous act, averment or denial.Gilbert v. Globe Insurance Co., 91 Or. 59;174 Pac. Rep. 1161; 3 A.L.R. 205. There is a further distinction, and that is with respect to the right to lift the ban of a waiver or estoppel. Where a party relinquishes a known right awarded him by contract, he cannot, without the consent of his adversary, reclaim it. But the ban of an estoppel may be lifted by the party against whom it was invoked by giving the proper notice. Ibid.
"To make out a case of waiver of a legal right, there must be a clear, unequivocal, and decisive act of the party showing such a purpose or acts amounting to an estoppel on his part. A waiver, to be operative, must be supported by an *Page 518 
agreement founded on a valuable consideration, or the act relied on as a waiver must be such as to estop a party from insisting on performance of the contract or forfeiture of the condition."27 R.C.L. 909, 910 tit. "Waiver." See, also, Maier v. Wallace,211 Mo. App. 454; 244 S.W. Rep. 945.
At the conclusion of the hearing in this cause I announced that in my judgment the complainants had waived the question as to building restrictions and that I would advise a decree for the defendants on their counter-claim. Complainants' solicitor then requested permission to file a brief pending the submission of form of decree. Both sides have now filed briefs, and I am of the same opinion still. But a further examination of the testimony and exhibits in this cause leads me to suggest another reason for advising a decree for the defendants on their counter-claim. There would seem to be no difficulty in spelling out a consideration for the waiver of the building restrictions, as, apparently, there was considerable give and take on both sides of this controversy.
For instance, several extensions of time for settlement were granted by the defendants to the complainants and these extensions may have afforded the consideration for the waiver; but aside from that, there is, in my judgment, sufficient here to work an estoppel.
It has been held that a party to a written contract who has by some affirmative action led the other party to believe and act on that belief, that he will not be held to a strict performance of the covenants, will be estopped in equity from requiring a strict performance of that covenant. Worrell v. Forsythe, 141 Ill. 22; 30 N.E. Rep. 673; Becker v. Becker, 250 Ill. 117;95 N.E. Rep. 70. As above indicated, the restrictions here in question were of small import. They were against factory construction. The lands here had already been built upon and the restrictions had not been violated. The restrictions will expire by their own limitation within a short period. If the vendees had not led the vendors to believe that there would be no objection because of these building restrictions, it is quite conceivable that the vendors might have had them removed prior to settlement. But from *Page 519 
the date of the telephone conversation following the letter of February 9th, which has already been referred to, there was never any suggestion or intimation by the vendees that they objected in the slightest degree to these restrictions, and this attitude continued right up to the time the dispute arose respecting the rents. At that time the deed prepared in accordance with the directions of the vendors through their attorney had been submitted to and approved by him. After the vendor's vigilance was disarmed by what was at least an apparent waiver, this court would become a party to a fraud to permit complainants to profit by their deception. Under these circumstances, I conceive it to be my duty to advise a decree for specific performance. It is quite apparent that the building restriction was finally seized upon as an excuse and not as a reason for non-performance. *Page 520 
[EDITORS' NOTE: THIS PAGE IS BLANK.] *Page 521