**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0963-20

DANIEL SIKORSKI,
Individually and on behalf
of all others similarly situated,

     Plaintiff-Respondent,

v.

NEW JERSEY VENTURES
PARTNERS, LLC d/b/a
GATEWAY CLASSIC CARS
OF NJ, SAL AKBANI,

     Defendants-Appellants,

and

TRAILER SOLUTIONS – FL,
LLC, COLLECTOR CARS
LENDING, AND ANDREW
ACKERMAN,

     Defendants-Respondents.

_____

Argued June 8, 2021 – Decided July 2, 2021

Before Judges Fisher, Gilson, and Gummer.

On appeal from the Superior Court of New Jersey, Law Division, Gloucester County, Docket No. L-0861-20.

Anthony E. Bush argued the cause for appellants (Eckert Seamans Cherin & Mellott, LLC, attorneys; Anthony E. Bush of counsel and on the briefs, Kevin F. Farrington on the briefs).

Andrew R. Wolf argued the cause for respondent (The Wolf Law Firm, LLC and Jonathan Rudnick, attorneys; Bharati O. Sharma and Jonathan Rudnick on the brief).

PER CURIAM

In this putative consumer class action, defendants New Jersey Ventures Partners, LLC d/b/a Gateway Classic Cars of NJ (Gateway) and Sal Akbani[1] (collectively the Gateway defendants) appeal an order denying their motion to compel arbitration and to dismiss the complaint with prejudice. Finding unpersuasive defendants' argument that they can compel arbitration because Gateway is a purported third-party beneficiary of a contract between plaintiff and a bank that loaned plaintiff money, we affirm.

Plaintiff bought a used 1971 Chevrolet Camaro from Gateway. Plaintiff and Gateway executed a "Motor Vehicle Purchase Contract," which contained a "[c]omplete [a]greement" clause, stating the contract "constitute[d] the entire agreement between the [p]arties." It did not contain an arbitration clause and

---

[1] According to plaintiff, Akbani is Gateway's "principal" and "manager."

said nothing about arbitration or any limit on plaintiff's ability to bring a lawsuit against Gateway.

To obtain additional funds to purchase the car, plaintiff obtained a loan from Medallion Bank. Two days after he signed the purchase contract with Gateway, plaintiff signed a Medallion Bank "SIMPLE INTEREST NOTE AND SECURITY AGREEMENT." The agreement identified plaintiff as "borrower" or "you"; the "1971 Chevrolet Camaro" as the property; Medallion Bank as the "lender," "we," or "us"; and, erroneously, Collector Car Lending as the seller.[2] The agreement expressly stated that "Medallion Bank, and not the seller of the [p]roperty . . . is the [l]ender in this transaction." Gateway was not identified as a party to the agreement, was not given any rights under the agreement, and did not execute the agreement.

The agreement contained the following provision:

> Notice of Limited Agency. This Note is a direct loan from us to you. For your convenience, we have asked the Seller of the Property you are purchasing with the proceeds of this Note to prepare and obtain your signature on this Note. Seller has no authority to approve or make this Note. Seller is not our agent in

---

[2] According to plaintiff, Collector Car Lending (CCL) is a "service provider for lenders." Gateway's showroom manager described CCL as "a documentation agent for lenders." Plaintiff submitted a finance application online to CCL, identifying Gateway as the seller, and subsequently received a loan from Medallion Bank. Gateway agrees it was the seller.

3

connection with the sale of the Property or in connection with any down payment or trade-in arrangements or for any purpose whatsoever other than for preparing and obtaining your signature on this Note. No employee or agent of Seller is authorized to make any promises or agreements with you about this Note. No oral or written promises or agreements between you and Seller about this Note are enforceable. Any representations, promises, or agreements between you and Seller in connection with the Property or any down payment or other matter in connection with the purchase must be resolved between you and Seller. If you have any questions about Seller's authority in connection with this Note, please contact us . . . .

The agreement contained an arbitration clause, which provided:

ARBITRATION. Either you or we may choose to have any dispute arising under this Note resolved by binding neutral arbitration under the rules then in effect of the American Arbitration Association ("AAA") or any other arbitration organization you choose and that we approve in writing ("the Arbitration Organization"). The arbitration shall be conducted under the then current rules of the Arbitration Organization and is governed by the Federal Arbitration Act (9 U.S.C. § 1 et. seq.) and not by any state law concerning arbitration.

. . . .

This arbitration provision shall survive termination or expiration of this Note. NO CLASS ACTION ARBITRATION MAY BE BROUGHT OR ORDERED UNDER THIS ARBITRATION PROVISION AND THERE SHALL BE NO JOINDER OF PARTIES, EXCEPT FOR JOINDER OF PARTIES TO THIS NOTE. IF EITHER YOU OR WE CHOOSE TO ARBITRATE, THE FOLLOWING WARNINGS

A-0963-20

APPLY: ALL DISPUTES BETWEEN YOU AND US WILL BE RESOLVED BY BINDING ARBITRATION; YOU WILL GIVE UP THE RIGHT TO SEEK REMEDIES IN COURT, INCLUDING THE RIGHT TO A JURY TRIAL; YOUR ABILITY TO COMPEL OTHER PARTIES TO PRODUCE DOCUMENTS OR BE EXAMINED WILL BE MORE LIMITED IN ARBITRATION THAN IN A LAWSUIT; AND, YOUR RIGHTS TO APPEAL OR CHANGE AN ARBITRATION AWARD IN COURT WILL BE VERY LIMITED.

After plaintiff paid for the car, the car was delivered to plaintiff and he had it inspected. The inspection revealed several problems, leading plaintiff to believe someone had "tampered" with the car and that it was not the car Gateway had advertised. Plaintiff asked Gateway for a refund or a substitute car; Gateway refused. Plaintiff subsequently learned the car could catch on fire and was dangerous to drive.

Plaintiff filed a putative class-action complaint with a jury demand, alleging, among other things, Gateway violated certain Automotive Sales Practices (ASP) regulations, N.J.A.C. 13:45A-26B.1 to -26B.4; the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 to -226 (CFA); and the Truth-in-Consumer Contract, Warranty and Notice Act, N.J.S.A. 56:12-14 to -18 (TCCWNA). Plaintiff also demanded pursuant to the Declaratory Judgment Act, N.J.S.A. 2A:16-50 to -62, a declaratory judgment that the purchase contract

5

violated the ASP regulations, the CFA, and TCCWNA and claimed Gateway had breached its warranties to plaintiff.

In lieu of an answer, the Gateway defendants moved to compel arbitration and dismiss the complaint with prejudice. They did not base their motion on anything in the Gateway purchase contract but relied solely on their contention that Gateway was a third-party beneficiary of the note agreement between plaintiff and Medallion Bank and could enforce the arbitration clause contained in that agreement.

In a well-reasoned written opinion, Judge James R. Swift denied the motion, holding the language used in the arbitration clause of the Medallion note agreement was "unambiguous" that the note agreement and its arbitration clause applied only to plaintiff and Medallion Bank. He also found Gateway and plaintiff had "entered into their own, separate contract when [p]laintiff agreed to purchase the car" and Gateway "could have added [its] own arbitration clause into the [p]urchase [c]ontract with [p]laintiff," but "chose not to do so and [is] instead trying to enforce a right in a contract in which [it was] not a party to, and [p]laintiff has not assented to." Finding the language of the Medallion note agreement "unequivocally contradicted" Gateway's third-party-beneficiary claim, Judge Swift held "there is nothing to indicate that the parties intended to

6

have [Gateway] as an intended third-party beneficiary" and found if plaintiff and Medallion wanted Gateway to be "a third-party beneficiary and [able to] enforce rights under the Note, they would have included language that indicates such." Judge Swift concluded the Gateway defendants "cannot enforce the arbitration provision because there is no mutual assent between [Gateway] and [p]laintiff," the Medallion note agreement "unambiguously states that the arbitration provision is between [p]laintiff and Medallion Bank," and Gateway was "not a third-party beneficiary" based on a lack of intent and the plain language of the Medallion note agreement stating the note agreement was "solely between [p]laintiff and Medallion Bank." Finding Gateway was "trying to enforce a right . . . [it did] not have," Judge Swift denied the motion. We agree and affirm.

We review de novo a decision about an arbitration agreement's enforceability. Skuse v. Pfizer, Inc., 244 N.J. 30, 46 (2020); see also Kernahan v. Home Warranty Adm'r of Fla., Inc., 236 N.J. 301, 316 (2019) ("Whether a contractual arbitration provision is enforceable is a question of law, and we need not defer to the interpretative analysis of the trial . . . court[] unless we find it persuasive.").

This cornerstone of our law on arbitration bears repeating: "[t]here must be mutual assent to arbitrate." Cottrell v. Holtzberg, ___ N.J. Super. ___, ____

(App. Div. 2021) (slip op. at 13); see also Skuse, 244 N.J. at 48 ("An arbitration agreement must be the result of the parties' mutual assent, according to customary principles of state contract law.").  As our Supreme Court held in Kernahan, "[a]n arbitration agreement is valid only if the parties intended to arbitrate because parties are not required 'to arbitrate when they have not agreed to do so.'"  236 N.J. at 317 (quoting Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ., 489 U.S. 468, 478 (1989)).  Courts have deemed mutual assent to arbitrate a requirement for the enforcement of an arbitration clause based on elemental contract-law principles, see id. at 319 ("[a]s a general principle of contract law, there must be a meeting of the minds for an agreement to exist before enforcement is considered"), and because in agreeing to arbitrate, a party surrenders the essential rights of access to our courts and trial by jury, see Skuse, 244 N.J. at 48-49; Atalese v. U.S. Legal Servs. Grp., L.P., 219 N.J. 430, 442-43 (2014).

Mutual assent, meaning "the knowing assent of both parties to arbitrate and a clear understanding of the ramifications of that assent," NAACP of Camden Cnty. E. v. Foulke Mgmt. Corp., 421 N.J. Super. 404, 425 (App. Div. 2011), is so critical to the enforceability of an arbitration clause that courts will find unenforceable arbitration clauses containing language insufficiently "clear

to place a consumer on notice that he or she is waiving a constitutional or statutory right." Atalese, 219 N.J. at 443.

The party seeking to enforce an arbitration agreement must prove the non-moving party "assented to it." Midland Funding LLC v. Bordeaux, 447 N.J. Super. 330, 337 (App. Div. 2016). Because Gateway's actual contract with plaintiff is devoid of any arbitration language, the Gateway defendants attempt to engraft Gateway onto plaintiff's contract with Medallion as a third-party beneficiary, relying on a nearly fifteen-year-old unpublished Law Division case and a reversed Appellate Division decision. Quoting our decision in Garfinkel v. Morristown Obstetrics & Gynecology Associates, P.A., 333 N.J. Super. 291 (App. Div. 2000), rev'd, 168 N.J. 124 (2001), defendants argue "'[n]onsignatories of a contract . . . may be subject to arbitration if the nonparty is an agent of a party or a third[-]party beneficiary to the contract.'" Id. at 308 (quoting Mut. Benefit Life Ins. Co. v. Zimmerman, 783 F. Supp. 853, 865 (D.N.J.), aff'd, 970 F.2d 899 (3d Cir. 1992)). Reversing our decision and finding the arbitration clause as a whole to be unenforceable because it was ambiguous, the Supreme Court stated it has "stressed that '[i]n the absence of a consensual understanding, neither party is entitled to force the other to arbitrate their dispute. Subsumed in this principle is the proposition that only those issues may

9

be arbitrated which the parties have agreed shall be.'" Garfinkel v. Morristown Obstetrics & Gynecology Assocs., P.A., 168 N.J. 124, 132 (2001) (quoting In re Arbitration Between Grover & Universal Underwriters Ins. Co., 80 N.J. 221, 228 (1979)).

Unable to point to any language establishing plaintiff assented to arbitrating his claims against Gateway, the Gateway defendants argue plaintiff must arbitrate his claims against them because he and Medallion did not expressly exclude Gateway from the arbitration provision in the Medallion note agreement. That argument turns our arbitration jurisprudence on its head – instead of proving actual assent to arbitrate, the party seeking to compel arbitration can simply rely on the absence of language refusing to arbitrate – and ignores the note agreement's language specifically limiting its application to plaintiff and Medallion.

If we were to accept Gateway's argument, plaintiff would be deprived of his rights of access to the courts and to a jury trial on his claims against the Gateway defendants when no contractual language – neither Gateway's purchase contract nor the Medallion note agreement – "clearly state[d that] purpose." See Marchak v. Claridge Commons, Inc., 134 N.J. 275, 282 (1993). Basing a right to arbitrate on an absence of language instead of the presence of language

establishing mutual assent would defeat our long-standing principle that "[i]t is requisite to waiver of a legal right that there be 'a clear, unequivocal, and decisive act of the party.'" W. Jersey Title & Guar. Co. v. Indus. Tr. Co., 27 N.J. 144, 153 (1958) (quoting Aron v. Rialto Realty Co., 100 N.J. Eq. 513, 517 (Ch. 1927), aff'd, 102 N.J. Eq. 331 (E. & A. 1928)). Applying that principle to arbitration, "[t]he point is to assure that the parties know that in electing arbitration as the exclusive remedy, they are waiving their time-honored right to sue." Marchak, 134 N.J. at 282; see also Hirsch v. Amper Fin. Servs., LLC, 215 N.J. 174, 187 (2013).[3]

---

[3] That concept – that the parties' intent must be clear – applies equally to creation of third-party beneficiaries. "The contractual intent to recognize a right to performance in the third person is the key. If that intent does not exist, then the third person is only an incidental beneficiary, having no contractual standing." Broadway Maint. Corp. v. Rutgers, State Univ., 90 N.J. 253, 259 (1982); see also Ross v. Lowitz, 222 N.J. 494, 513 (2015). The Gateway defendants have failed to establish an intent by plaintiff and Medallion to give Gateway a "right to performance" of the Medallion note agreement. See ibid. That it was the ultimate recipient of the funds Medallion loaned to plaintiff may have made Gateway an "incidental beneficiary"; it did not make it an intended third-party beneficiary with a right to compel performance. See ibid. Even if it did, "we are not satisfied that the third-party beneficiary status . . . means binding arbitration is a predetermined sequela of that status when the claim is considered against the canvas of our arbitration jurisprudence." Crystal Point Condo. Ass'n, Inc. v. Kinsale Ins. Co., 466 N.J. Super. 471, 486 (App. Div. 2021).

11

Effectively, the Gateway defendants want us to expand the scope of the arbitration clause in the Medallion note agreement to include Gateway. That we cannot do. See Yale Materials Handling Corp. v. White Storage & Retrieval Sys., Inc., 240 N.J. Super. 370, 374 (App. Div. 1990) (holding a court "may not rewrite a contract to broaden the scope of arbitration"); see also Crystal Point, 466 N.J. Super. at 485-86 (declining to expand an arbitration provision of an insurance policy to include a purported third-party beneficiary of the policy).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION